<hr/>

[No. 10896.  Department Two.  February 2, 1914.]

PUBLIC SERVICE COMMISSION, on the Relation of Transporta-
tion Bureau of Tacoma Commercial Club, Respondent,

v. NORTHERN PACIFIC RAILWAY COMPANY,

Appellant.[1]

CARRIERS—RATES—REGULATION—UNLAWFUL DISCRIMINATION—REA-
SONABLENESS. Under 3 Rem. & Bal. Code, § 8626-21, providing that no
common carrier shall give any undue or unreasonable preference
or advantage to any person or locality, a community is entitled to
something more than mere reasonable rates, since the rates must
be relatively equal to all shippers where there is no structural or
operative difference favoring a haul from one point over a haul
from another to the same shipping points.

SAME — DISCRIMINATION — EFFECT OF COMPETITION — REASONABLE-
NESS—EVIDENCE—SUFFICIENCY. Under 3 Rem. & Bal. Code, § 8626-21,
providing that no common carrier shall give any undue or unreason-
able preference to any person or locality, it is an unreasonable and
unlawful discrimination for a railroad company to charge less rates
on class commodities from Seattle than from Tacoma to the "jobbing
center" of Spokane and tributary points, in order to meet the com-
petitive rates of another railway having a shorter line from Seat-
tle, where it appears that there were no structural, operative or
other conditions favoring the haul from Seattle, which was slightly
longer than the haul from Tacoma, the difference in rates being suf-
ficiently great to drive the Tacoma manufacturers and jobbers from
the markets.

SAME—STATUTES—CONSTRUCTION. 3 Rem. & Bal. Code, § 8626-21,
forbidding a carrier from giving undue or unreasonable preference

[1]Reported in 138 Pac. 270.

or advantages to persons or localities, applies in all instances where no transportation difference intervenes, regardless of the question whether the person, locality, or traffic is affected by the competition of a rival or not.

Appeal from a judgment of the superior court for Pierce county, Easterday, J., entered October 11, 1912, affirming an order of the public service commission in favor of the plaintiff, compelling the defendant to equalize its class rates between distribution points.    Affirmed.

*Geo. T. Reid, J. W. Quick*, and *L. B. da Ponte*, for appellant, contended, among other things, that it is not unjust or unreasonable discrimination to meet the short line competitive rates of a rival road. *East Tennessee, V. & G. R. Co. v. Interstate Commerce Commission*, 181 U. S. 1; *Morrell & Co. v. Chicago, B. & Q. R. Co.*, 20 I. C. C. 400; *Omaha Grain Exchange v. Chicago & N. W. R. Co.*, 19 I. C. C. 424; *Fisk & Sons v. Baltimore & M. R. Co.*, 19 I. C. C. 299; *Columbia Grocery Co. v. Louisville & N. R. Co.*, 18 I. C. C. 502; *Blake & Sons Hardware & Mfg. Co. v. Baltimore & Ohio R. Co.*, 20 I. C. C. 139; *American Cigar Co. v. Philadelphia & Reading R. Co.*, 20 I. C. C. 81; *Corporation Commission of North Carolina v. Norfolk & W. R. Co.*, 19 I. C. C. 303; *Breese-Trenton Min. Co. v. Wabash R. Co.*, 19 I. C. C. 598; *Railroad Commission of Nevada v. Southern Pac. Co.*, 21 I. C. C. 329, 366; *Business Men's League v. Baltimore & Ohio R. Co.*, 24 I. C. C. 125; *Chamber of Commerce of Minneapolis v. Great Northern R. Co.*, 5 I. C. C. 571; *Superior Commercial Club v. Great Northern R. Co.*, 24 I. C. C. 96.

*The Attorney General* and *Stephen V. Carey, Assistant*, for respondent, contended that it is the function of the commission to pass upon the merits of rate controversies.    The courts cannot interfere unless it clearly appears that the commission has exceeded its constitutional or statutory powers or

that its decision is based upon a palpably erroneous misapplication of law. *Joynes v. Pennsylvania R. Co.*, 17 I. C. C. 361; *Interstate Commerce Commission v. Illinois Cent. R. Co.*, 215 U. S. 452; *Baltimore & Ohio R. Co. v. United States ex rel. Pitcairn Coal Co.*, 215 U. S. 481; *Interstate Commerce Commission v. Illinois Cent. R. Co.*, 215 U. S. 452, 470, 478; *Interstate Commerce Commission v. Chicago, R. I. & P. R. Co.*, 218 U. S. 88, 103; *Interstate Commerce Commission v. Union Pac. R. Co.*, 222 U. S. 541; *Puget Sound Elec. R. v. Railroad Commission*, 65 Wash. 75, 117 Pac. 739, Ann. Cas. 1913 B. 763. Every community is entitled to rates that are, first, inherently reasonable, and, second, that are relatively reasonable; that is, not discriminatory. *Railroad Commissioners of Florida v. Seaboard Air Line R.*, 16 I. C. C. 1; *Railroad Commission of Nevada v. Southern Pac. Co.*, 21 I. C. C. 329; *Elk Cement & Lime Co. v. Baltimore & Ohio R. Co.*, 22 I. C. C. 84; *Mobile Chamber of Commerce v. Mobile & O. R. Co.*, 23 I. C. C. 417. A carrier cannot be required to meet water competition, market competition or the competition of a rival line; but if it does elect to meet such competition for one community, it must meet it for all communities similarly situated. Failure to do so is an unjust and undue and consequently an unlawful, discrimination. *Railroad Commission of Nevada v. Southern Pac. Co., supra; Spokane v. Northern Pac. R. Co.*, 21 I. C. C. 400; *Milburn Wagon Co. v. Lake Shore & M. S. R. Co.*, 22 I. C. C. 93; *Traffic Bureau of Sioux City Commercial Club v. Chicago & N. W. R. Co.*, 22 I. C. C. 110; *Chamber of Commerce of Ashburn v. Georgia Southern & Florida R. Co.*, 23 I. C. C. 140; *Long and Short Haul Docket, No. 1243*, 22 I. C. C. 366. It is not the province of a railroad to make and unmake markets and commercial centers. *Sufferin Grain Co. v. Illinois Cent. R. Co.*, 22 I. C. C. 178; *Alpha Portland Cement Co. v. Baltimore & Ohio R. Co.*, 22 I. C. C. 446. The fact that a discrimination is slight does not excuse its

existence. If it exists at all and is not defensible for some good transportation reason, it must be eliminated. *Fort Dodge Commercial Club v. Illinois Cent. R. Co.*, 16 I. C. C. 572. The possibility of other cities demanding rate adjustments is not a good reason for refusing relief where it appears as a fact that a discriminatory condition exists. *Chamber of Commerce of Newport News v. Southern R. Co.*, 23 I. C. C. 345.

FULLERTON, J.—On February 5, 1912, the public service commission of Washington promulgated an order, effective March 2, 1912, applicable to the several railroad companies operating lines within the state, fixing maximum charges which it would thereafter be lawful to make for the transportation of certain class commodities over their respective lines from certain named jobbing centers. The order is known as the distributive rate order. In it the commission finds that certain named cities in the state of Washington, which includes the cities of Spokane, Everett, Seattle and Tacoma, are jobbing centers; it finds that the then prevailing distance tariff rates on class commodities shipped from these centers are unjust, unreasonable, and excessive, and finds that certain lesser charges were just, reasonable, and remunerative. It then ordered that the named commodities should thereafter be carried at a rate not to exceed the maximum so found to be reasonable. The order did not fix maximum rates between different specific points. A scale of maximum mileage rates was established, and the carriers affected thereby were left to adjust their rates within the maximum so established.

It is well here to explain that by class commodities are meant commodities carried under class rates. In the state of Washington, these classes are principally of ten sorts, in each of which many different commodities are assigned. A given rate is fixed for the first class, and the others are based

on a percentage of the first class rate, the rate growing less
as the scale descends. All commodities, however, are not thus
classified. Distinct rates are established for commodities
which move regularly in large quantities, such, for instance
as hay, grain, coal, lumber, etc., carried in carload lots. The
class rates are intended to cover, principally, goods handled
by jobbers in commercial centers, and include such commod-
ities as groceries, hardware, drygoods, and the principal
manufactured articles. The question here involves class rates
only.

The order of the commission affected the freight charges of
both the Great Northern Railway Company, and the Nor-
thern Pacific Railway Company. Prior to the time the order
went into effect, these companies had uniform rates from the
principal shipping points on Puget Sound to the various
points in the eastern part of the state. The Great Northern
Railway Company, however, has much the shorter line across
the state, and its mileage became a controlling factor in fix-
ing the rates under the commission's order. By the lines of
the Great Northern Railway, the distance from Tacoma to
Spokane is 377 miles; and from Seattle to Spokane it is 339
miles. By the Northern Pacific Railway Company's line, the
distance from Tacoma to Spokane is 395.1 miles, and from Se-
attle to Spokane it is 398.6 miles. The order of the commis-
sion permitted a maximum rate on commodities falling within
the first class, based on the mileage of the Great Northern
Railway Company, of $1.07 per hundred pounds between Ta-
coma and Spokane, and $.99 per hundred pounds between Se-
attle and Spokane, while a rate based on the mileage of the
Northern Pacific Railway Company between the same points
would permit a charge of $1.10 per hundred pounds. Since
the city of Spokane was also made by the order "a jobbing
center," the shorter mileage of the Great Northern Company
affected the rates to the various points in the territory sur-
rounding that city, although not reached by the Great Nor-

thern lines, but which are reached by the lines of the Northern
Pacific Company. The relative situation is shown on the
rough sketch following:

SOLID LINE ——— N. P RY.

BROKEN LINE ..... G N RY.

On the going into effect of the commission's order, the
Great Northern Railway Company readjusted its class rates
to the maximum permitted by the order, making the first
class rate 107 cents per hundred pounds for all freight orig-
inating at Tacoma, and 99 cents per hundred pounds for all
freight originating at Seattle. On readjusting its rates, the
Northern Pacific Railway Company disregarded its own mile-
age, and based its rates on the mileage of the Great Northern
Railway Company, also making a rate of 107 cents per hun-
dred pounds for all freight originating at Tacoma, and 99
cents per hundred pounds for all freight originating at Se-
attle, although, as we have shown, the actual distance over its
lines is greater between Seattle and Spokane than it is be-
tween Tacoma and Spokane. This difference in the rates be-
tween the principal points named also compelled a difference
in the rates between Seattle and Tacoma and the places sur-

rounding Spokane.   These differences are shown in the following table:

| Distances | | | Class rates per one hundred pounds. | | | | | | | | | |
| To | From | Miles | 1 | 2 | 3 | 4 | 5 | A | B | C | D | E |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Yardley | Tacoma | 398.6 | 110 | 94 | 77 | 66 | 55 | 55 | 44 | 33 | 28 | 22 |
| | Seattle | 402.1 | 109 | 93 | 76 | 65 | 55 | 55 | 44 | 33 | 28 | 22 |
| Difference favor Seattle | | | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 |
| Spokane | Tacoma | 395.1 | 107 | 91 | 75 | 64 | 54 | 54 | 43 | 32 | 27 | 21 |
| | Seattle | 398.6 | 99 | 84 | 69 | 59 | 50 | 50 | 40 | 30 | 25 | 20 |
| Difference favor Seattle | | | 8 | 7 | 6 | 5 | 4 | 4 | 3 | 2 | 2 | 1 |
| Wins | Tacoma | 388.5 | 107 | 91 | 75 | 64 | 54 | 54 | 43 | 32 | 27 | 21 |
| | Seattle | 392.0 | 99 | 84 | 69 | 59 | 50 | 50 | 40 | 30 | 25 | 20 |
| Difference favor Seattle | | | 8 | 7 | 6 | 5 | 4 | 4 | 3 | 2 | 2 | 1 |
| Marshall | Tacoma | 385.8 | 107 | 91 | 75 | 64 | 54 | 54 | 43 | 32 | 27 | 21 |
| | Seattle | 389.3 | 99 | 84 | 69 | 59 | 50 | 50 | 40 | 30 | 25 | 20 |
| Difference favor Seattle | | | 8 | 7 | 6 | 5 | 4 | 4 | 3 | 2 | 2 | 1 |
| Cheney | Tacoma | 378.5 | 107 | 91 | 75 | 64 | 54 | 54 | 43 | 32 | 27 | 21 |
| | Seattle | 382.0 | 99 | 84 | 69 | 59 | 50 | 50 | 40 | 30 | 25 | 20 |
| Difference favor Seattle | | | 8 | 7 | 6· | 5 | 4 | 4 | 3 | 2 | 2 | 1 |
| Midway | Tacoma | 373.6 | 106 | 90 | 74 | 64 | 53 | 53 | 42 | 32 | 27 | 21 |
| | Seattle | 377.1 | 99 | 84 | 69 | 59 | 50· | 50 | 40 | 30 | 25 | 20 |
| Difference favor Seattle | | | 7 | 6 | 5 | 5 | 3 | 3 | 2 | 2 | 2 | 1 |
| Tyler | Tacoma | 367.9 | 105 | 89 | 74 | 63 | 53 | 53 | 42 | 32 | 26 | 21 |
| | Seattle | 371.4 | 99 | 84 | 69 | 59 | 50 | 50 | 40 | 30 | 25 | 20 |
| Difference favor Seattle | | | 6 | 5 | 5 | 4 | 3 | 3 | 2 | 2 | 1 | 1 |
| Fishtrap | Tacoma | 364.0 | 104 | 88 | 73 | 62 | 52 | 52 | 42 | 31 | 26 | 21 |
| | Seattle | 367.5 | 99 | 84 | 69 | 59 | 50 | 50 | 40 | 30 | 25 | 20 |
| Difference favor Seattle | | | 5 | 4 | 4 | 3 | 2 | 2 | 2 | 1 | 1 | 1 |
| Kline | Tacoma | 358.9 | 103 | 88 | 72 | 62 | 52 | 52 | 41 | 31 | 26 | 21 |
| | Seattle | 362.4 | 99 | 84 | 69 | 59 | 50 | 50 | 40 | 30 | 25 | 20 |
| Difference favor Seattle | | | 4 | 4 | 3 | 3 | 2 | 2 | 1 | 1 | 1 | 1 |
| Sprague | Tacoma | 353.7 | 102 | 87 | 71 | 61 | 51 | 51 | 41 | 31 | 26 | 20 |
| | Seattle | 357.2 | 99 | 84 | 69 | 59 | 50 | 50 | 40 | 30 | 25 | 20 |
| Difference favor Seattle | | | 3 | 3 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 0 |
| Concord | Tacoma | 349.5 | 101 | 86 | 71 | 61 | 51 | 51 | 40 | 30 | 25 | 20 |
| | Seattle | 353.0 | 99 | 84 | 69 | 59 | 50 | 50 | 40 | 30 | 25 | 20 |
| Difference favor Seattle | | | 2 | 2 | 2 | 2 | 1 | 1 | 0 | 0 | 0 | 0 |
| Keystone | Tacoma | 343.9 | 100 | 85 | 70 | 60 | 50 | 50 | 40 | 30 | 25 | 20 |
| | Seattle | 347.4 | 99 | 84 | 69 | 59 | 50 | 50 | 40 | 30 | 25 | 20 |
| Difference favor Seattle | | | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 |
| Dynamite | Tacoma | 391.1 | 107 | 91 | 75 | 64 | 54 | 54 | 43 | 32 | 27 | 21 |
| | Seattle | 394.6 | 99 | 84 | 69 | 59 | 50 | 50 | 40 | 30 | 25 | 20 |
| Difference favor Seattle | | | 8 | 7 | 6 | 5 | 4 | 4 | 3 | 2 | 2 | 1 |
| Spangle | Tacoma | 397. | 107 | 91 | 75 | 64 | 54 | 54 | 43 | 32 | 27 | 21 |
| | Seattle | 400.5 | 99 | 84 | 69 | 59 | 50 | 50 | 40 | 30 | 25 | 20 |
| Difference favor Seattle | | | 8 | 7 | 6 | 5 | 4 | 4 | 3 | 2 | 2 | 1 |

21—77 WASH.

| Distances | | | Class rates per one hundred pounds. | | | | | | | | | |
| To | From | Miles | 1 | 2 | 3 | 4 | 5 | A | B | C | D | E |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Freedom | Tacoma | · | 107 | 91 | 75 | 64 | 54 | 54 | 43 | 32 | 27 | 21 |
| | Seattle | | 99 | 84 | 69 | 59 | 50 | 50 | 40 | 30 | 25 | 20 |
| Difference favor Seattle | | | 8 | 7 | 6 | 5 | 4 | 4 | 3 | 2 | 2 | 1 |
| Plaza | Tacoma | 405.2 | 107 | 91 | 75 | 64 | 54 | 54 | 43 | 32 | 27 | 21 |
| | Seattle | | 99 | 84 | 69 | 59 | 50 | 50 | 40 | 30 | 25 | 20 |
| Difference favor Seattle | | | 8 | 7 | 6 | 5 | 4 | 4 | 3 | 2 | 2 | 1 |
| No. Pine | Tacoma | 409.1 | 107 | 91 | 75 | 64 | 54 | 54 | 43 | 32 | 27 | 21 |
| | Seattle | 412.6 | 99 | 84 | 69 | 59 | 50 | 50 | 40 | 30 | 25 | 20 |
| Difference favor Seattle | | | 8 | 7 | 6 | 5 | 4 | 4 | 3 | 2 | 2 | 1 |
| Rosalia | Tacoma | 412.4 | 107 | 91 | 75 | 64 | 54 | 54 | 43 | 32 | 27 | 21 |
| | Seattle | 415.9 | 99 | 84 | 69 | 59 | 50 | 50 | 40 | 30 | 25 | 20 |
| Difference favor Seattle | | | 8 | 7 | 6 | 5 | 4 | 4 | 3 | 2 | 2 | 1 |
| Broadview | Tacoma | 413.8 | 107 | 91 | 75 | 64 | 54 | 54 | 43 | 32 | 27 | 21 |
| | Seattle | 417.3 | 99 | 84 | 69 | 59 | 50 | 50 | 40 | 30 | 25 | 20 |
| Difference favor Seattle | | | 8 | 7 | 6 | 5 | 4 | 4 | 3 | 2 | 2 | 1 |
| Donahue | Tacoma | 414.4 | 107 | 91 | 75 | 64 | 54 | 54 | 43 | 32 | 27 | 21 |
| | Seattle | 417.9 | 99 | 84 | 69 | 59 | 50 | 50 | 40 | 30 | 25 | 20 |
| Difference favor Seattle | | | 8 | 7 | 6 | 5 | 4 | 4 | 3 | 2 | 2 | 1 |
| McCoy's | Tacoma | 417.6 | 107 | 91 | 75 | 64 | 54 | 54 | 43 | 32 | 27 | 21 |
| | Seattle | 421.1 | 99 | 84 | 69 | 59 | 50 | 50 | 40 | 30 | 25 | 20 |
| Difference favor Seattle | | | 8 | 7 | 6 | 5 | 4 | 4 | 3 | 2 | 2 | 1 |
| Oakesdale | Tacoma | 423.3 | 107 | 91 | 75 | 64 | 54 | 54 | 43 | 32 | 27 | 21 |
| | Seattle | 426.8 | 99 | 84 | 69 | 59 | 50 | 50 | 40 | 30 | 25 | 20 |
| Difference favor Seattle | | | 8 | 7 | 6 | 5 | 4 | 4 | 3 | 2 | 2 | 1 |
| Kelly's | Tacoma | 426. | 107 | 91 | 75 | 64 | 54 | 54 | 43 | 32 | 27 | 21 |
| | Seattle | 429.5 | 99 | 84 | 69 | 59 | 50 | 50 | 40 | 30 | 25 | 20 |
| Difference favor Seattle | | | 8 | 7 | 6 | 5 | 4 | 4 | 3 | 2 | 2 | 1 |
| Belmont | Tacoma | 428.6 | 107 | 91 | 75 | 64 | 54 | 54 | 43 | 32 | 27 | 21 |
| | Seattle | 432.1 | 99 | 84 | 69 | 59 | 50 | 50 | 40 | 30 | 25 | 20 |
| Difference favor Seattle | | | 8 | 7 | 6 | 5 | 4 | 4 | 3 | 2 | 2 | 1 |
| Haysfields | Tacoma | 432.1 | 107 | 91 | 75 | 64 | 54 | 54 | 43 | 32 | 27 | 21 |
| | Seattle | 435.6 | 99 | 84 | 69 | 59 | 50 | 50 | 40 | 30 | 25 | 20 |
| Difference favor Seattle | | | 8 | 7 | 6 | 5 | 4 | 4 | 3 | 2 | 2 | 1 |
| Farm-ington | Tacoma | 434.1 | 107 | 91 | 75 | 64 | 54 | 54 | 43 | 32 | 27 | 21 |
| | Seattle | 437.6 | 99 | 84 | 69 | 59 | 50 | 50 | 40 | 30 | 25 | 20 |
| Difference favor Seattle | | | 8 | 7 | 6 | 5 | 4 | 4 | 3 | 2 | 2 | 1 |
| Eden | Tacoma | 432.9 | 107 | 91 | 75 | 64 | 54 | 54 | 43 | 32 | 27 | 21 |
| | Seattle | 436.4 | 99 | 84 | 69 | 59 | 50 | 50 | 40 | 30 | 25 | 20 |
| Difference favor Seattle | | | 8 | 7 | 6 | 5 | 4 | 4 | 3 | 2 | 2 | 1 |
| Garfield | Tacoma | 435.1 | 107 | 91 | 75 | 64 | 54 | 54 | 43 | 32 | 27 | 21 |
| | Seattle | 438.6 | 99 | 84 | 69 | 59 | 50 | 50 | 40 | 30 | 25 | 20 |
| Difference favor Seattle | | | 8 | 7 | 6 | 5 | 4 | 4 | 3 | 2 | 2 | 1 |
| Cedar Cr'k | Tacoma | 438.7 | 107 | 91 | 75 | 64 | 54 | 54 | 43 | 32 | 27 | 21 |
| | Seattle | 442.2 | 105 | 89 | 74 | 63 | 53 | 53 | 42 | 32 | 26 | 21 |
| Difference favor Seattle | | | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 0 | 1 | 0 |

| Distances | | | Class rates per one hundred pounds. | | | | | | | | | |
| To | From | Miles | 1 | 2 | 3 | 4 | 5 | A | B | C | D | E |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Palouse | Tacoma | 444.7 | 107 | 91 | 75 | 64 | 54 | 54 | 43 | 32 | 27 | 21 |
| | Seattle | 448.2 | 105 | 89 | 74 | 63 | 53 | 53 | 42 | 32 | 26 | 21 |
| Difference favor Seattle | | | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 0 | 1 | 0 |
| Fallon's | Tacoma | 451.3 | 107 | 91 | 75 | 64 | 54 | 54 | 43 | 32 | 27 | 21 |
| | Seattle | 454.8 | 105 | 89 | 74 | 63 | 53 | 53 | 42 | 32 | 26 | 21 |
| Difference favor Seattle | | | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 0 | 1 | 0 |
| Whelan | Tacoma | 456.1 | 107 | 91 | 75 | 64 | 54 | 54 | 43 | 32 | 27 | 21 |
| | Seattle | 459.6 | 105 | 89 | 74 | 63 | 53 | 53 | 42 | 32 | 26 | 21 |
| Difference favor Seattle | | | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 0 | 1 | 0 |
| Pullman | Tacoma | 459.3 | 107 | 91 | 75 | 64 | 54 | 54 | 43 | 32 | 27 | 21 |
| Spur | Seattle | 462.8 | 105 | 89 | 74 | 63 | 53 | 53 | 42 | 32 | 26 | 21 |
| Difference favor Seattle | | | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 0 | 1 | 0 |
| Pullman | Tacoma | 462.7 | 107 | 91 | 75 | 64 | 54 | 54 | 43 | 32 | 27 | 21 |
| Jct. | Seattle | 466.2 | 105 | 89 | 74 | 63 | 53 | 53 | 42 | 32 | 26 | 21 |
| Difference favor Seattle | | | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 0 | 1 | 0 |

After the tariff schedule had been put into effect, the transportation bureau of the Tacoma Commercial Club complained to the public service commission concerning it, alleging that the rates prescribed gave an undue and unreasonable preference and advantage with respect to the transportation of class commodities to the manufacturers, jobbers, and wholesale dealers of Seattle over like manufacturers, jobbers, and wholesale dealers of Tacoma. A citation was issued to the railroad company directing it to answer the complaint, and thereafter a hearing was had, which resulted in an order derecting that the class rates between Seattle and Tacoma, respectively, and the points named in the foregoing table, be equalized so that the class rates from Tacoma thereto should not be greater than the class rates thereto from Seattle. From this order, an appeal was taken to the superior court of Pierce county, where the order was affirmed. The present appeal is from the judgment of the last named court affirming the order.

The section of the statute upon which the commission based its order is found in the public service commission law, and reads as follows:

"Sec. 21. No common carrier shall make or give any undue or unreasonable preference or advantage to any person or

corporation or to any locality or to any particular description of traffic in any respect whatsoever, or subject any particular person or corporation or locality or any particular description of traffic, to any undue or unreasonable prejudice or disadvantage in any respect whatsoever." Laws 1911, p. 555, § 21 (3 Rem. & Bal. Code, § 8626-21).

The appellant contends that this section is not applicable to the facts shown in the present record. It contends that the prohibition therein is directed against undue and unreasonable preferences and advantages to one locality over another voluntarily and wrongfully given by the carrier, and do not relate to such preferences and advantages as are forced upon the carrier in the necessary competition for business; and it argues that its act in fixing a lower class rate for freight from Seattle to the points named in its schedule than it granted to Tacoma was not voluntary or wrongful, since it was forced to do so in order to meet the schedule of a competing carrier, else abandon the carrying business to the points named for freight originating at Seattle. It calls attention, also, to the fact that its class rates as fixed by its schedules are within the maximum rates permitted by the public service commission in its distributive rate order, and that they are not by the complainants contended to be other than just and reasonable rates.

In support of its contentions, the appellant cites and relies chiefly on the case of *East Tennessee, V. & G. R. Co. v. Interstate Commerce Commission*, 181 U. S. 1. In that case, it appears that the Board of Trade of Chattanooga, Tennessee, a chartered corporation, petitioned the Interstate Commerce Commission for relief under the act to regulate commerce. The defendants the East Tennessee, Virginia and Georgia Railway, and numerous other rail and steamship companies, were alleged to be common carriers subject to the act to regulate commerce, and engaged in the transportation of freight from Boston, New York, Philadelphia, Baltimore and other places on the Eastern seaboard to Chattanooga, Nashville

and Memphis, in the state of Tennessee, and that they conveyed freight from the points named on the eastern seaboard through and beyond Chattanooga to Nashville and Memphis for a lesser rate to such long distance points than was charged by them for like freight to Chattanooga, the shorter distance. this it was averred was in violation of the provisions of the commerce act prohibiting a greater charge for a shorter than for a longer haul, and also a violation of the further provisions of the act forbidding the giving of undue and unreasonable preferences.  The defendants named defended on the ground that a certain other carrier had put in rates to Nashville from the seaboard points named which were less than the defendants' rates, and that they had been compelled to lower their own rates to that point in order to participate in the Nashville business.  The commission held that their action in so doing was in violation of the commerce act, and entered an order forbidding the defendants to charge a greater compensation for the shorter distance to Chattanooga than was charged by them for the longer distances to Nashville and Memphis.  This order was affirmed in the Circuit Court of the United States, in which an action was begun to enforce the order of the commission, 85 Fed. 107; and on appeal was affirmed by the Circuit Court of Appeals for the Sixth Circuit, 99 Fed. 52.  On appeal to the Supreme Court, however, the order was reversed on the ground that the competition complained of by the defendants justified a greater charge for the shorter than the longer haul, and consequently did not constitute an unlawful discrimination.  In the course of the opinion, the court, after reciting the arguments used by the commissioners in support of their order, and quoting excerpts from the earlier cases of the Supreme Court thought to sustain it, used this language:

"It is not difficult to perceive the origin of the fallacy upon which the contention rests.  It is found in blending the third and fourth sections in such a manner as necessarily to destroy one by the other instead of construing them so as to cause

them to operate harmoniously. In a supposed case when, in the first instance, upon an issue as to a violation of the fourth section of the act, it is conceded or established that the rates charged to the shorter distance point are just and reasonable in and of themselves, and it is also shown that the lesser rate charged for the longer haul is not wholly unremunerative and has been forced upon the carriers by competition at the longer distance point, it must result that a discrimination springing alone from a disparity in rates cannot be held, in legal effect, to be the voluntary act of the defendant carriers, and as a consequence the provisions of the third section of the act forbidding the making or giving of an undue or unreasonable preference or advantage will not apply. The prohibition of the third section, when that section is considered in its proper relation, is directed against unjust discrimination or undue preference arising from the voluntary and wrongful act of the carriers complained of as having given undue preference, and does not relate to acts the result of conditions wholly beyond the control of such carriers. And especial attention was directed to this view in the *Behlmer* case, in the passage which we have previously excerpted. To otherwise construe the statute would involve a departure from its plain language, and would be to confound cause with effect. For, if the preference occasioned in favor of a particular place by competition there gives rise to the right to charge the lesser rate to that point, it cannot be that the availing of this right is the cause of the preference, and especially is this made clear in the case supposed, since it is manifest that forbidding the carrier to meet the competition would not remove the discrimination.

"The only principle by which it is possible to enforce the whole statute is the construction adopted by the previous opinions of this court; that is, that competition which is real and substantial, and exercises a potential influence on rates to a particular point, brings into play the dissimilarity of circumstance and condition provided by the statute, and justifies the lesser charge to the more distant and competitive point than to the nearer and non-competitive place, and that this right is not destroyed by the mere fact that incidentally the lesser charge to the competitive point may seemingly give a preference to that point, and the greater rate to the non-competitive point may apparently engender a discrimination

against it.  We say seemingly on the one hand and apparently on the other, because in the supposed cases the preference is not 'undue' or the discrimination 'unjust.'  This is clearly so, when it is considered that the lesser charge upon which both the assumption of preference and discrimination is predicated is sanctioned by the statute, which causes the competition to give rise to the right to make such lesser charge.  Indeed, the findings of fact made by the commission in this case leave no room for the contention that either undue preference in favor of Nashville or unjust discrimination against Chattanooga arose merely from the act of the carriers in meeting the competition existing at Nashville. The commission found that if the defendant carriers had not adjusted their rates to meet the competitive condition at Nashville, the only consequence would have been to deflect the traffic at the reduced rates over other lines.  From this it follows that, even although the defendant carriers had not taken the dissimilarity of circumstance and condition into view, and had continued their rates to Nashville just as if there had been no dissimilarity of circumstance and condition, the preference in favor of Nashville growing out of the conditions there existing would have remained in force and hence the discrimination which thereby arose against Chattanooga would have likewise continued to exist.  In other words, both Nashville and Chattanooga would have been exactly in the same position if the long and short haul clause had not been brought into play."

It has seemed to us, however, that this case is not in point on the question now before us.  In the first place, it will be observed from the language of the opinion that the decision is made to rest largely, if not entirely, on that clause of the long and short haul section of the commerce act confining the operation of the section to hauls "under substantially similar circumstances and conditions," which has since been eliminated by an amendment to the act, and which never had any place in the similar section contained in our own act.  The change in the statute in this respect was material.  As the statute read at the time of the decision, greater compensation for shorter than longer hauls were prohibited only in cases where the circumstances and conditions were substantially similar;

now, such charges were prohibited under all circumstances and conditions except where specially permitted by the commission. This, it seems to us, is sufficient in itself to render it doubtful whether the court would, should a similar question be presented to it for adjudication, regard the decision as authority upon the question. In the second place, the facts of the cases are not the same. In that case, all shippers of freight were treated alike; all could ship to Chattanooga at one price, and all to Nashville at one price, the consumer only being affected because of the higher rate to Chattanooga than to Nashville. In the case before us, the discrimination is made at the point of origin of the shipment, and is made between shippers of freight shipping wholly over the lines of the company making the discrimination, where the distances are practically the same, and where no structural, operative or other conditions intervene which make the cost of haul greater from the one point than from the other.

We think, therefore, that we may treat the question then as one of first impression; and doing so, it remains to inquire whether there is a just cause for the discrimination of which complaint is made. By the section of the public service commission law above quoted, carriers are forbidden to make or give undue or unreasonable preferences or advantages to any person, or to any locality, or to any particular description of traffic. This means that a community is entitled to something more at the hands of the carrier than a mere reasonable rate, for rates must not only be reasonable in and of themselves, but they must be relatively reasonable; the duty imposed is to give equal treatment to all shippers, whatever their relative situation so long as the differences do not unequally affect the carrier. Carriers are not, of course, compelled to equalize natural disadvantages; such, for example, as arise from unequal length of haul, cost of production of the articles shipped, or the like; the prohibition only militates against discrimination where the conditions are like or similar. As we have said, there is no structural or operative differences which

would favor a haul from Seattle to the shipping points named over a haul from Tacoma to the same points. Indeed, the differences, if any exist, lie in favor of Tacoma, as the haul from that place to the points named is slightly less in distance than is the haul from Seattle.

The claim of right made by the appellant to make a less rate from Seattle to these points than it made from Tacoma rests entirely on the fact that a competitor had made such a less rate, and that it was compelled to meet this rate or else lose the traffic originating at that point. Is this reason sufficient? Aside from the general question, it seems to us that the record demonstrates that in the particular case it is not. Were the city of Seattle a city of minor importance as a manufacturing and distributing point, and its shipments inconsequential, there would doubtless be some merit in the claim. But the contrary is the fact. The record made by the commission abundantly shows that Seattle is one of the principal distributing points on the Northwest coast, and that its manufacturers and jobbers enter into active competition with the manufacturers and jobbers of Tacoma and elsewhere for the trade of the markets named. The record shows, also, that the commodities usually carried under class rates are handled by the jobbers and manufacturers at a close margin of profit, and that the differential in rates made in this instance is sufficiently great to drive the Tacoma jobbers and manufacturers from these markets. This being true, the appellant railway can derive no profit because of the higher rate from Tacoma. It will still do the hauling on this class of goods at Seattle rates, but it will haul all of them from Seattle instead of dividing the haul between the two cities as it had formerly done. This is discrimination without justification, and is both unreasonable and unlawful.

But we think a judgment affirming the commission's order may rest on broader grounds. We think the section of the statute forbidding a carrier from giving undue and unrea-

sonable preferences or advantages to persons, localities, or particular descriptions of traffic, must apply in all instances where no transportation differences intervene, regardless of. the question whether the person, locality, or description of traffic is affected by the competition of a rival carrier or not. If, to take the present instance, the Northern Pacific Railway Company may lawfully discriminate between Seattle and Tacoma in its freight charges between these points and the points of consumption, it may, on the same principle, lawfully discriminate between shipments originating wholly in Seattle. It may make one rate for a Seattle shipper whose shipping warehouse is accessible to the Great Northern Railway Company, and another and higher rate to the same point for a shipper whose warehouse is not so accessible. And since the rates of its rival are alone to be considered, no reason can be suggested why, under the same rule, varying rates for different shippers might not be made owing to the accessibility of the point of origin of the shipment to the rival railway. company's lines. It seems to us that this cannot be the purport of the legislative enactment. The only alternative rule, then, is to require equal treatment for all persons, localities, and descriptions of traffic whose relations to the shipping carrier are like and similar. The order of the commission in the case before us exacts no more than this, and should be affirmed. It will be so ordered.

CROW, C. J., MAIN, ELLIS, and MORRIS, JJ., concur.