[No. 15233.    Department One.    September 15, 1920.]

THE STATE OF WASHINGTON, *on the Relation of Great Northern Railway Company, Appellant,* v. PUBLIC SERVICE COMMISSION, *Respondent.*[1]

CARRIERS (6)—REGULATION OF RATES—MILLING PRIVILEGES—DIS-CRIMINATION—REASONABLENESS—EVIDENCE—SUFFICIENCY. The pro-hibition of Rem. Code, §§ 8626-20, 8626-21, is only against discrimina-tion which is unjust or unreasonable; and it is not unjust or undue discrimination for a railroad company to grant milling-in-transit privileges to a station at the terminus of the road involving a back haul on its own line of thirty-four miles, as against another city forty-four miles beyond the terminus, which the company reached only over a leased line at a greater operating expense.

SAME. Upon an issue as to the reasonableness of discrimination in allowing a back haul, a long haul may make it fair to grant the privilege which the road could not be compelled to grant on a shorter haul.

Appeal from a judgment of the superior court for Thurston county, Wilson, J., entered August 14, 1918, affirming an order of the public service commission compelling the relator to extend to a shipper milling in transit privileges, tried to the court. Reversed.

*F. V. Brown* and *Thomas Balmer* (*A. J. Laughon,* of counsel), for relator.

*The Attorney General* and *R. M. Burgunder, Assist-ant,* for respondent.

MACKINTOSH, J.—The Sperry Flour Company, oper-ating a flour mill at Tacoma, initiated a proceeding before the public service commission to compel the Great Northern Railway to extend to it at Tacoma the milling in transit privileges in effect at Seattle on wheat shipped from points on the railway's lines in

[1]Reported in 192 Pac. 1075.

eastern Washington, the finished product to be deliv-
ered to points on the Great Northern Railway, north
and east of Seattle. In the railway company's answer
it admitted that, by its tariffs, milling in transit privi-
leges were extended to shippers at Seattle and Ever-
ett, and it claimed that its tariff rules with respect to
such privileges were just and reasonable, and therefore
legal. The public service commission granted the
prayer of the flour company's complaint, and upon
appeal to the superior court, a final judgment was
entered affirming the order of the public service com-
mission, and from that judgment, this appeal is taken.

The facts are as follows: The Sperry Flour Com-
pany purchases its wheat at points on the appellant's
railway in eastern Washington, from which it is
shipped to the mill at Tacoma, and then reshipped, as
the finished product, to various points on appellant's
line. The appellant has established and maintained
rates on wheat shipped from eastern Washington to
Seattle, where there are some ten mills competing with
the complainant, and by these rates these mills are per-
mitted to mill such wheat in transit at Seattle and
reship it to other points on the appellant's line at rates
lower than its regular rates on the finished product,
but the appellant refuses to accord the same privileges
to the complainant at Tacoma, and the complainant
claims that it is thereby subjected to undue, unjust
and unreasonable discrimination, in that it pays higher
rates on the finished product than its Seattle com-
petitors. The milling in transit privileges are ex-
tended to shippers at both Seattle and Everett, but at
no other places on appellant's line in western Wash-
ington. The appellant's line reaches Puget Sound at
Everett, from which point it extends northward beyond
Bellingham and southward to Seattle. From Seattle

to Tacoma the appellant operates trains over the Northern Pacific Railway's lines under trackage agreement, whereby it pays a certain price for each car moved by it. Such use is under a contract by which the operating and maintaining expenses are on the basis of the number of cars hauled on the tracks. Tolt and Sultan are points east of Everett, Sultan being an intermediate point on the appellant's main line, and Tolt on a branch line south from Monroe, a station on the main line between Everett and Sultan. Everett is distant from Seattle thirty-four miles, and Tacoma is distant from Everett seventy-five miles, through Seattle.

The milling in transit privileges extended to shippers at Seattle on shipments received in eastern Washington and milled at Seattle and reshipped to points north of Everett involve a back haul of thirty-four miles; such a privilege extended to the complainant at Tacoma would require a back haul of seventy-five miles. The through rates on eastern shipments to Tacoma is the same as through rates on shipments to Seattle and Everett. The Northern Pacific and Chicago, Milwaukee & Puget Sound Railways accord milling in transit privileges at Tacoma and Seattle on eastern shipments milled at either point, the finished product to be reshipped to points north. On the Northern Pacific lines this involves a back haul of eighteen miles, and on the Milwaukee a back haul of twenty-six miles. Both of these railroads operate lines into and through the territory north of Seattle, the Northern Pacific extending to the Canadian border, and the Milwaukee having lines through Tolt, Monroe and Everett. East of Everett on the appellant's line there is no flour mill in western Washington. There is one small mill at Everett which has not sufficient capacity to supply the

local point or points on appellant's line north of Everett and west of Sultan. The appellant admits that the milling in transit privileges extended to Everett and Seattle are discriminatory as they may affect the complainant, and prefers the mills at those points to the complainant, but contends that such discrimination and preference are not unlawful unless the preference is unreasonable and the discrimination unjust.

The statutes (Rem. Code, §§ 8626-20, 8626-21), forbid those discriminations and preferences which give an undue and unreasonable preference or advantage to traffic under the same or substantially similar circumstances and conditions. The prohibitions of the state law are identical with those of the Federal act. U. S. Comp. Stats., §§ 8564, 8565. It must be borne in mind throughout this discussion that back haul privileges are not extended by carriers unless some peculiar condition requires it, and that, in order to furnish back haul privileges to the complainant, it would be necessary for the shipments of wheat to pass through the Seattle terminal twice.

The Federal act has been under consideration by the supreme court of the United States and by the interstate commerce commission many times. Those considerations have resulted in the establishment of the principle that preferences or advantages may be granted that are not undue or unjust or unreasonable. In *Cincinnati, New Orleans & T. P. R. Co. v. Interstate Commerce Commission,* 162 U. S. 184, the supreme court said:

"Subject to the two leading prohibitions that their charges shall not be unjust or unreasonable, and that they shall not unjustly discriminate, so as to give undue preference or advantage or subject to undue prejudice or disadvantage persons or traffic similarly circumstanced, the act to regulate commerce leaves com-

mon carriers as they were at the common law, free to make special contracts looking to the increase of their business, to classify their traffic, to adjust and apportion their rates so as to meet the necessities of commerce, and generally to manage their important interests upon the same principles which are regarded as sound and adopted in other trades and pursuits.''

In *Texas & Pacific R. Co. v. Interstate Commerce Commission*, 162 U. S. 197, occurs the following:

''Commerce, in its largest sense, must be deemed to be one of the most important subjects of legislation, and an intention to promote and facilitate it, and not to hamper or destroy it, is naturally to be attributed to Congress. The very terms of the statute, that charges must be *reasonable,* that discrimination must not be *unjust,* and that preference or advantage to any particular person, firm, corporation, or locality must not be *undue* or *unreasonable,* necessarily imply that strict uniformity is not to be enforced; but that all circumstances and conditions which reasonable men would regard as affecting the welfare of the carrying companies, and of the producers, shippers and consumers, should be considered by a tribunal appointed to carry into effect and enforce the provisions of the act.

''The principal purpose of the second section is to prevent unjust discrimination between shippers. It implies that, in deciding whether differences in charges, in given cases, were or were not unjust, there must be a consideration of the several questions whether the services rendered were 'like and contemporaneous,' whether the kinds of traffic were 'like,' whether the transportation was effected under 'substantially similar circumstances and conditions.' To answer such questions, in any case coming before the Commission, requires an investigation into the facts; and we think that Congress must have intended that whatever would be regarded by common carriers, apart from the operation of the statute, as matters which warranted differences in charges, ought to be considered in forming a judgment whether such differences were or were not

'unjust.' Some charges might be unjust to shippers—
others might be unjust to the carriers. The rights and
interests of both must under the terms of the act, be
regarded by the Commission.

"The third section forbids any undue or unreason-
able preference or advantage in favor of any person,
company, firm, corporation or locality; and as there is
nothing in the act which defines what shall be held to
be due or undue, reasonable or unreasonable, such
questions are questions not of law, but of fact. The
mere circumstance that there is, in a given case, a
preference or an advantage does not of itself show that
such preference or advantage is undue or unreasonable
within the meaning of the act."

In *Wight v. United States,* 167 U. S. 512, Justice
Brewer, speaking for the court, says:

"It was the purpose of the action to enforce equality
between shippers, and it prohibits any rebate or other
device by which the shippers, shipping over the same
line, the same distance, under the same circumstances,
are compelled to pay different prices therefor."

*Interstate Commerce Commission v. Baltimore &
Ohio R. Co.,* 145 U. S. 263, holds:

"The principal objects of the Interstate Commerce
Act were to secure just and reasonable charges for
transportation; to prohibit unjust discriminations in
the rendition of like services under similar circum-
stances and conditions; to prevent undue or unreason-
able preferences to persons, corporations, or localities;
to inhibit greater compensation for a shorter than for
a longer distance over the same line; and to abolish
combinations for the pooling of freights. . . . It is
not all discriminations or preferences that fall within
the inhibition of the statute; only such as are unjust
or unreasonable. . . . Indeed, the possibility of just
discriminations and reasonable preferences is recog-
nized by these sections, in declaring what shall be
deemed unjust. . . . In order to constitute an unjust
discrimination under section 2, the carrier must charge
or receive directly from one person a greater or less

compensation than from another, or must accomplish the same thing indirectly by means of a special rate, rebate, or other device; but, in either case, it must be for a 'like and contemporaneous service in the transportation of a like kind of traffic, under substantially similar circumstances and conditions.' . . . 'To come within the inhibition of said sections, the differences must be under like conditions; that is, there must be contemporaneous service in the transportation of like kinds of traffic under substantially the same circumstances and conditions. . . .' "

*Stone v. Farmers' Loan & Trust Co.,* 116 U. S. 307, announces the principle in this language:

"This power to regulate is not a power to destroy, and limitation is not the equivalent of confiscation. Under pretense of regulating fares and freights, the state cannot require a railroad corporation to carry persons or property without reward; neither can it do that which in law amounts to a taking of private property for public use without just compensation, or without due process of law."

*East Tennessee etc. R. Co. v. Interstate Commerce Commission,* 181 U. S. 1, holds:

"The prohibition of the third section, when that section is considered in its proper relation, is directed against unjust discrimination or undue preference arising from the voluntary and wrongful act of the carriers complained of as having given undue preference, and does not relate to acts the result of conditions wholly beyond the control of such carriers. And special attention was directed to this view in the *Behlmer* case, in the passage which we have previously excerpted. To otherwise construe the statute would involve a departure from its plain language, and would be to confound cause with effect. For, if the preference occasioned in favor of a particular place by competition there gives rise to the right to charge the lesser rate to that point, it cannot be that the availing of this right is the cause of the preference, and especially is this made clear in the case supposed, since it

is manifest that forbidding the carrier to meet the competition would not remove the discrimination.

"The only principle by which it is possible to enforce the whole statute is the construction adopted by the previous opinions of this court; that is, that competition which is real and substantial, and exercises a potential influence on rates to a particular point, brings into play the dissimilarity of circumstance and condition provided by the statute, and justifies the lesser charge to the more distant and competitive point than to the nearer and noncompetitive place, and that this right is not destroyed by the mere fact that incidentally the lesser charge to the competitive point may seemingly give a preference to that point, and the greater rate to the non-competitive point may apparently engender a discrimination against it."

To the same effect, see *Interstate Commerce Comm. v. Diffenbaugh*, 222 U. S. 42; *In re Import and Domestic Rates—Clay*, 39 I. C. C. 132; *Douglas & Co. v. Illinois Cent. R. Co.*, 31 I. C. C. 587; *Empson Packing Co. v. Colorado Midland R. Co.*, 22 I. C. C. 268; *In re Investigation etc. Rates on Meats*, 22 I. C. C. 160; *Royal Milling Co. v. Great Northern R. Co.*, 52 I. C. C. 151; *Board of Trade of Kansas City v. St. Louis & S. F. R. Co.*, 32 I. C. C. 297.

"It is not within the power of this Commission to equalize economic conditions, or to place one market in a position to compete on equal terms with another market as against natural advantages." *Baltimore Chamber of Commerce v. Baltimore & Ohio R. Co.*, 22 I. C. C. 596.

"It is well settled that it is not the province of the Commission to make adjustments which will offset the natural advantages or disadvantages of one locality as compared with another." *Harrisonburg Milling Co. v. Ann Arbor R. Co.*, 52 I. C. C. 63.

"An arrangement of the kind here sought would undoubtedly be of considerable value to the complainants, but upon this record we cannot find that the

refusal of defendants to provide therefor is unreasonable, unjustly discriminatory, or unduly prejudicial, and consequently there is no justification for our requiring its establishment. The complaint in this case must therefore be dismissed." *Grain & Hay Exchange etc. v. Pennsylvania Co.,* 32 I. C. C. 409.

"Where unjust discrimination is alleged against one point and undue preference to another and the same rates are demanded as a remedy therefor, the evidence should show that the circumstances and conditions with respect to transportation at the respective points are substantially the same." *Eagle Distillery Inc. v. Louisville, H. & St. L. R. Co.,* 32 I. C. C. 195.

"When rates are attacked as unduly prejudicial and an equalization of rates is requested, it should be shown that the transportation conditions existing in the localities under comparison are substantially similar. In the absence of such proof a finding of discrimination cannot be predicated solely on a disparity of rates." (Syllabus) *Chamber of Commerce of Houston v. International & G. N. R. Co.,* 32 I. C. C. 247.

See, also, *Stock & Sons v. Lake Shore & M. S. R. Co.,* 31 I. C. C. 150; *Middletown Car Co. v. Pennsylvania R. Co.,* 32 I. C. C. 185; *Empire Coke Co. v. Buffalo & S. R. Co.,* 31 I. C. C. 573.

"Shippers are not entitled as matter of right to mill grain in transit and forward the milled product under the through rate in force on the grain from the point of origin to the place of ultimate destination; on the contrary, milling in transit is a special privilege for which extra compensation is usually exacted by carriers and which is only permitted by them under prescribed terms and conditions." (Syllabus) *Diamond Mills v. Boston & M. R. Co.,* 9 I. C. C. 311.

The complainant places a great reliance upon the decision of this court in the case of *State ex rel. Northern Pac. R. Co. v. Public Service Commission,* 95 Wash. 376, 163 Pac. 1143. That case determined that the commission had a right to hear a complaint such as is

presented in this case, but does not sustain the result arrived at by the commission in this case. The Prosser case involved the milling in transit privileges, but no question of back haul was involved. The court held that Prosser, being an intermediate point, was entitled to the same milling in transit privileges as was North Yakima, a point beyond Prosser, and that both Prosser and North Yakima were similarly situated. The fact that it was a milling in transit case has nothing to do with the decision of that case. Prosser, on account of its location between the point of origin and the point of discharge of the shipment, and being similarly situated as was Yakima, was entitled to the same rights. In the case before us, Tacoma is not an intermediate point and is only entitled, if at all, to the extension of the milling in transit tariff as a privilege and not as a right, on the ground that it would be unjust and unfair not to accord it to Tacoma when it has been granted to Seattle. Nor are the Seattle mills entitled to the tariff as a matter of right, and it might be that the privilege would be withdrawn on the complaint of someone adversely affected; but that matter is not before us, and the fact that the privilege has been extended to Seattle does not authorize its compulsory extension to other localities as matters of right, where such other localities are not similarly situated, or where the extension would be unfair or unjust to the railway company, but only where the refusal of such extension would be unfair or unjust to the unfavored locality.

The Great Northern Railway has no line from Seattle to Tacoma, and for each car which it moves between those points it must pay to the lessor of the line over which it operates. From Everett to Seattle it owns and operates its own line, and in addition to the

back haul from Everett to Seattle being not half as great as from Everett to Tacoma, it has a right to take into consideration the fact that, on the former, the expense to the railroad company is not nearly as great as it would be if it were compelled to make the longer back haul, not only by reason of extra distance, but by reason, as well, of not being the owner of the line over which the longer back haul must be made. The fact that Seattle, Everett and Tacoma may receive the same terminal rates from shipments east does not establish that they are physically identically situated as related to all transcontinental roads; the fact being that, on the Great Northern Railway line, they are not physically identically or similarly situated.

The cases cited by complainant are similar to the Prosser case, where, on direct line hauls, or out of line hauls, intermediate stations similarly situated have been granted the same privileges which have been extended by the companies to points farther along the line, but in none of these cases has the court held that back haul privileges must be given to a point reached by the road either on its main line or through traffic arrangements with other lines, where that privilege has been granted to one or more points on its line.

As a matter of fact, the instant case is quite the contrary to the Prosser case. In the Prosser case, an intermediate point was seeking the same privileges which had been granted to a point further along the line. In the instant case, Seattle is the intermediate point, and Tacoma, the point further along the line, is asserting it must have the same privilege as the intermediate point has, although it involves an additional haul of forty-four miles to Tacoma and forty-four miles back to Seattle. The refusal of this privilege cannot be said to be unjust or unfair. If the privilege

had been granted by the railroad company to the mill at Tacoma and the privilege was being attacked by some shipper along the line, the court might hold it was not unjust and unfair to the other shipper, the railroad having granted it. But here the complainant is seeking to compel the railroad company to grant the privilege, which will not be done unless the privilege already granted to Seattle results in unfair, unjust and unreasonable discrimination.

"We think, therefore, that we may treat the question then as one of first impression; and in doing so, it remains to inquire whether there is a just cause for the discrimination of which complaint is made. By the section of the Public Service Commission law above quoted [Rem. Code, § 8626-21], carriers are forbidden to make or give undue or unreasonable preferences or advantages to any person, or to any locality, or to any particular description of traffic. This means that a community is entitled to something more at the hands of the carrier than a mere reasonable rate, for rates must not only be reasonable in and of themselves, but they must be relatively reasonable; the duty imposed is to give equal treatment to all shippers, whatever their relative situation so long as the differences do not unequally affect the carrier. Carriers are not, of course, compelled to equalize natural disadvantages; such, for example, as arise from unequal length of haul, cost of production of the articles shipped, or the like; the prohibition only militates against discrimination where the conditions are like or similar. As we have said, there is no structural or operative difference which would favor a haul from Seattle to the shipping points named over a haul from Tacoma to the same points. Indeed, the differences, if any exist, lie in favor of Tacoma, as the haul from that place to the points named is slightly less in distance than is the haul from Seattle." *Public Service Commission ex rel. Transportation Bureau etc. v. Northern Pac. R. Co.*, 77 Wash. 635, 138 Pac. 270.

The court recognizes that the prohibition is against discrimination where conditions are like or similar, and the facts in this case show that conditions are not like or similar, and that to compel the railroad company to furnish free transportation on a great many cars annually from Tacoma to Everett would entail a haul of 150 miles on each car taken to Tacoma, the contents of which would be milled and shipped back to points north of Everett. This unequal length in haul is a natural disadvantage so far as Tacoma is concerned with reference to the Great Northern Railway Company, and under the Tacoma rate case, the company is not compelled to eliminate all consideration of that natural disadvantage.

*Chamber of Commerce of Newport News v. Southern R. Co.,* 23 I. C. C. 345, considered the question of Newport News and Norfolk, as related to the matter of tariff, and which are only twelve miles apart. The commission held that, the distance being so small, these two points had practically the same natural advantages.

The complainant further contends that this back haul from Tacoma is not unreasonable, for the reason that the appellant voluntarily created a back haul of the same distance on wheat shipped from Montana. In the first place, the complainant is not in position to complain of this discrimination as being unfair; for the discrimination, if any, is against the eastern Washington shippers, who are not before the court, and, in the second, it may be that, on account of extra compensation received by the railroad company by virtue of the longer haul, it was fair to grant a privilege which it would not be compelled to grant on a shorter haul for which it receives less compensation.

The complainant also questions the privilege which is granted to Seattle mills to ship not only to points north, but to Sultan and Tolt. Both these points are upon the line of the Great Northern Railway, and what has been said heretofore applies to the right of the railroad company to extend the privilege of the haul from Seattle to these points.

Upon the whole record, we are not satisfied that the complainant has established that the preference given to Seattle millers is an unreasonable one, or the discrimination unjust. Therefore the tariff is not unlawful, and the order of the public service commission will be vacated, and the judgment of the superior court reversed.

HOLCOMB, C. J., MAIN, MITCHELL, and PARKER, JJ., concur.