**ROCKWOOD CORPORATION OF ST. LOUIS v. BRICKLAYERS' LOCAL UNION NO. 1 OF ST. LOUIS et al.**

Circuit Court of Appeals, Eighth Circuit.
May 13, 1929.

No. 8357.

James T. Roberts and Matt J. Holland, both of St. Louis, Mo. (George Eigel and Edward C. Schneider, both of St. Louis, Mo., on the brief), for appellant.

Thomas J. Rowe, Jr., of St. Louis, Mo. (Henry Rowe, of St. Louis, Mo., on the brief), for appellees.

Before LEWIS, Circuit Judge, and WOODROUGH and McDERMOTT, District Judges.

LEWIS, Circuit Judge. Appellant, a Delaware corporation, manufactures out of gypsum at its plant in East St. Louis, Illinois, a fireproof building material, which it calls Rockwood lumber; and it brought this suit in reliance on the Sherman Anti-Trust Act and the Clayton Act (U. S. Code, title 15, §§ 1 and 15 [15 USCA §§ 1, 15]) against three local labor unions, their officers and agents at St. Louis, Missouri, charging them with a conspiracy to inaugurate a boycott of plaintiff's material and to call strikes on building construction wheresoever the material might be used. The gist of plaintiff's grievance is disclosed in these excerpts from the bill:

"Complainant further states that on the 17th day of February, 1927, the said defendants well knowing the facts herein set out illegally conspired, confederated and determined to compel the contractors, architects and builders using the complainant's product, or specifying its use to employ certain labor dictated by the said defendants to install the products of complainant in certain buildings being erected in the City of St. Louis and St. Louis County, and in pursuance of said conspiracy the said defendants unlawfully and with the intent to ruin the Interstate Commerce business of the said complainant warned contractors and customers of complainant, who were at the time using, and who intended to use in the erection of buildings the products of said Company, that if said contractors, customers, architects and

builders installed complainant's product, Rockwood, in any buildings and used, or employed for the installation of said product any labor or persons except such persons as the defendants would dictate should be employed to install said material in the building, and that if said contractors, customers, architects and builders refused to comply with the orders of the said defendants that a strike and boycott would be inaugurated against them and each of them by the defendants, and in pursuance of said threat the said defendants did inaugurate a boycott against the material of complainant, and did inaugurate and are still carrying on a secondary boycott against the product of complainant's factory. That as a result of the unlawful conspiracy to ruin the Interstate Commerce business of this complainant, complainant has lost almost its entire business in the State of Missouri, and more particularly in the City of St. Louis, and St. Louis County.

"Complainant avers that its business will be entirely ruined and its entire investment will be lost unless immediate relief be granted by this Honorable Court.

"Complainant further states that the defendants acting individually and for and in behalf of their associations have unlawfully, wrongfully and intentionally conspired with each other, and with various other persons, to the complainant unknown, to injure and boycott complainant and the products of its factory, and to prevent complainant to carry on its business in Interstate Commerce and to prevent the installing of the product of complainant in buildings being erected in the City of St. Louis, and St. Louis County, in the State of Missouri."

A controversy in February, 1927, at a garage then under construction in St. Louis is mentioned in the bill and relied on as tending strongly to support the main charge. Damages and injunctive relief were sought.

A joint answer denied all charges of conspiracy and set forth the real matter in dispute, viz.: Whether under the rules, practices, customs, and usages of building trades plaintiff's material should be installed by bricklayers or by carpenters. It was alleged in the answer that plaintiff's material was not lumber, as plaintiff had represented, but a plaster block, and its installation was rightfully and properly within the province of the bricklayers' trade. On final hearing the bill was dismissed and plaintiff brought this appeal.

Gypsum blocks were installed by bricklayers, but plaintiff made its material for building purposes in different forms from what had theretofore been used. Its hollow tile for use in flooring construction were of greater lengths and it made long slabs with tongues and grooves, to be set on ends for partitions. The joints were then closed plastically. The plaintiff called its material Rockwood lumber, and somehow carpenters began to install it. They could fashion and fit it with their tools. Bricklayers also could put it in with equal facility. Hence it was to be expected that disputation between the two crafts would arise. This condition continued for some time, workmen of each craft insisting on their claimed rights when occasion arose, sometimes one and sometimes the other did the installing. At no time was objection raised by either to the material, or its use, its origin, or otherwise. At no time was obstruction of interstate commerce in contemplation. The construction contract called for plaintiff's material in partitions in the garage mentioned in the pleadings, and carpenters began to install it. Brick masons were also at labor on the building. The members of the two crafts there present entered into a controversial discussion as to which had the right to put in the material. Defendant McNamara, agent of defendant Bricklayers' Local Union No. 1, appeared. It is not clear whether he arrived before or after the discussion between workmen was begun. He took up the claims of the bricklayers and insisted they should put in the partitions. The subcontractor for the brick work seems to have joined with McNamara. The bricklayers on the job quit work for a while; some testified for about two hours while the discussion was on, others that they laid off for a day. No strike was called. The result was the carpenters withdrew and the bricklayers put in the partition. Plaintiff's material was removed and the bricklayers used gypsum blocks. McNamara testified he told them it was not necessary to remove plaintiff's material, that the bricklayers would go on from where the carpenters stopped. After that architects, builders and contractors refrained from specifying or using plaintiff's material in St. Louis because of fear of labor troubles.

All of the defendants except McNamara and Bricklayers' Local Union No. 1 were completely out of the case. There was no proof that they had anything whatever to do with the controversy, or took any action about it, or said anything about it, or felt in anywise concerned about it. Appellant insists it made a case against Bricklayers' Union No. 1 and McNamara, its agent, that they conspired in violation of the statutory prohi-

bition. Of course, that contention must be sustained by proof. Conceding that McNamara's acts should be censured, he could not combine or conspire with himself. We held in Union Pac. Coal Co. v. United States (C. C. A.) 173 F. 737, as stated in the syllabi:

"A combination between a corporation and its officer or agent in violation of the anti-trust act * * * cannot be formed by the thoughts or acts of the officer or agent alone, without the conscious participation in it of any other officer or agent of the corporation."

The learned district judge, in reviewing the case at the close of the trial, said:

"It is not shown that defendant union (Bricklayers' Local) ever took any cognizance whatever of the matter. Defendant McNamara, the business agent of defendant Bricklayers' Union, called the bricklayers from work, if they were actually called off, and he alone, so far as the evidence discloses, acted upon his own initiative. He acted, I repeat, so far as the record shows, on his own responsibility. His act in calling the bricklayers from the work had not been ordered by the union, or by any other defendant, nor was this act subsequently ratified by the union, or by any other defendant. In short, there is not a scintilla of evidence connecting any person or organization with the act of interference or of calling the strike except defendant McNamara alone. Since I find the record to be utterly barren of any evidence whatever of concerted action here, I find no restraint of interstate commerce, and I find no evidence of a conspiracy. It is but fair to say that all of the acts alleged against McNamara are denied. I have conceded for argument's sake that the fact that the bricklayers were called off for a short time by defendant McNamara has been proven. He acted upon his own initiative and upon his own responsibility, and his acts were not even ratified by the defendant union or by any other defendant in the case. As I construe the Sherman Anti-Trust Act, it contemplates concerted action. There is no proof here of any concert of action between defendant McNamara and any other defendant in the case."

Our study of the record leads us to a concurrence in those conclusions.

Moreover, conceding a conspiracy between Bricklayers' Local Union No. 1 and its agent McNamara, that conspiracy was not to restrain or interfere with interstate commerce. The alleged conspirators had no such thought, intent or purpose. They were entirely willing, so far as the proof shows, that plaintiff's material should be used in St. Louis or elsewhere. They had no grievance other than the claim that as between crafts bricklayers should install the material. The controversy was wholly between bricklayers and carpenters, and the result therefrom, in so far as it affected plaintiff, was an indirect, remote and unintended obstruction; so we further agree with the district judge that Bedford Cut Stone Co. v. Stone Cutters' Ass'n, 274 U. S. 37, 47 S. Ct. 522, 71 L. Ed. 916, 54 A. L. R. 791, has no application here when the facts which support the ruling in that case are considered. Rather, it is our opinion that the facts bring this case well within United Leather Workers' International Union v. Herkert & Meisel Trunk Co., 265 U. S. 457, 44 S. Ct. 623, 68 L. Ed. 1104, 33 A. L. R. 566.

The order appealed from is affirmed.