[No. 14624. *En Banc.* July 8, 1918.]

## THE STATE OF WASHINGTON, *on the Relation of the City of Seattle, Appellant,* v. PUBLIC SERVICE COMMISSION *et al., Respondents.*[1]

CARRIERS—DISCRIMINATION — CONSTITUTIONAL AND STATUTORY PROVISIONS. The constitutional and statutory provisions against discrimination by carriers, with the proviso (Rem. Code, § 8626-18) that nothing therein shall prevent the issuance of commutation tickets, give the carrier the right to issue temporary commutation tickets at its discretion.

CARRIERS—STREET RAILWAYS—REGULATION OF RATES—POWERS OF PUBLIC SERVICE COMMISSION — ABROGATION OF FRANCHISE — POLICE POWER. Under the public service commission act, Rem. Code, § 8626-53, authorizing the commission to fix reasonable rates and fares for carriers sufficient to yield a reasonable income, the commission has power to abrogate a preexisting franchise provision requiring the sale of commutation tickets at a certain price; since the city could not bind itself as against the state's exercise of the police power in fixing reasonable rates.

SAME — RATES — REGULATIONS — EVIDENCE — SUFFICIENCY. Relief from a franchise provision requiring a street railway company to issue twenty-five-ride commutation tickets for $1.00 without transfer privilege, is warranted where the proof showed that the company was not receiving any net returns, there was a deficit at the time of the hearing, and the returns of the company, not considering depreciation, were less than two per cent upon the actual cost of the railway system.

SAME—RATES—REGULATION—CONDITIONS PRECEDENT—VALUATIONS —STATUTES. Rem. Code, § 8626-92, providing that the public service commission shall "as early as practicable" ascertain the cost of

[1]Reported in 173 Pac. 737.

construction and equipment, does not require an independent valuation of a street railway system prior to fixing reasonable rates for passenger fares.

Appeal from an order of the superior court for Thurston county, Mitchell, J., entered November 16, 1917, affirming an order of the public service commission authorizing the discontinuance of the sale of commutation tickets as provided for in a street railroad franchise ordinance. Affirmed.

*Hugh M. Caldwell, Walter F. Meier,* and *Frank S. Griffith,* for appellant.

*James B. Howe* and *Hugh A. Tait,* for respondents.

MOUNT, J.—This appeal is from a judgment of the superior court of Thurston county, which affirmed an order of the public service commission permitting the Puget Sound Traction, Light & Power Company to substitute a five-cent fare per passenger in lieu of commutation tickets for $1 each, good for twenty-five rides.

The Puget Sound Traction, Light & Power Company operates a system of street railways in the city of Seattle pursuant to franchise ordinances granted by the city, which prescribed the terms and conditions on which such railways were constructed, maintained and are operated. Among the terms and conditions upon which franchises were granted was one relating to fares to be charged and commutation tickets to be issued by the grantees of such franchises as follows:

"Commutation Tickets: The grantees, their successors and assigns, shall keep on sale for one dollar ($1) each at their main offices and power stations within the city commutation tickets entitling the purchaser to twenty-five rides. Such tickets shall not be transferable nor entitle the owner to a transfer and the company may make such reasonable regulations in regard to the issue and use of the same as to enforce these provisions."

After these franchises had been granted, the legis-
lature of the state of Washington enacted chapter 117
of the Laws of 1911, p. 538 (Rem. Code, § 8626-1 *et
seq.*), relating to public service properties and utilities
and providing for the regulation of the same, which
act is commonly known as the public service commis-
sion law. It took effect on June 7, 1911. After that
act took effect, the Seattle Electric Company, a pred-
ecessor of the Puget Sound Traction, Light & Power
Company, filed with the public service commission a
statement of fares as required thereby, item No. 2 of
which statement specified a rate of fare of twenty-five
tickets for $1, without transfer privilege, within the
limits of the city of Seattle. Thereafter, on the 11th
day of July, 1917, the Puget Sound Traction, Light &
Power Company filed with the public service commis-
sion a statement of fares as follows:

"Item No. 2 providing 'Twenty-five (25) tickets for
$1, without transfer privilege, within the limits of the
city of Seattle' is cancelled entirely. This supplement
has the effect of cancelling all fares within the city
limits of Seattle that are less than five cents, except as
shown in item No. 3 for school children."

Thereupon the city of Seattle filed a protest and
complaint with the public service commission. In this
protest and complaint the city took the position that
the public service commission did not have authority
to relieve the power company from complying with the
franchise provision requiring the sale of commutation
tickets as provided in the franchise ordinance. There-
after the case was heard before the public service com-
mission, and resulted in an order as follows:

"That the protest of the city of Seattle against the
supplement to the Puget Sound Traction, Light &
Power Company's passenger tariff, cancelling Item
No. 2 of such tariff, which provides for the sale of
twenty-five (25) tickets for one dollar ($1) without

transfer privileges within the limits of the city of Seattle, be and the same is hereby dismissed, and that said tariff supplement be permitted to go into effect immediately.''

The city thereupon sued out a writ of review. Upon a hearing on this writ the lower court affirmed the order of the commission. This appeal followed.

Counsel for appellant divide their argument into four points, but these resolve themselves into two questions: First, has the public service commission power to authorize the discontinuance of the sale of commutation tickets provided for in the franchise? Second, if the public service commission has such power, is the proof sufficient to authorize the order?

Upon the first question, the appellant argues that, under the constitution and statute, the public service commission has no power to authorize the discontinuance of commutation tickets provided for in the company's franchise. The constitution, at § 15 of article 12, provides:

''No discrimination in charges or facilities for transportation shall be made by any railroad or other transportation company between places or persons, . . . Excursion and commutation tickets may be issued at special rates.''

And at § 8626-18, Rem. Code, it is provided:

''No common carrier shall charge, demand, collect or receive a greater or less or different compensation for transportation of persons or property, or for any service in connection therewith, than the rates, fares and charges applicable to such transportation as specified in its schedules filed and in effect at the time; . . . And provided, further, that nothing herein contained shall prevent the issuance of mileage, commutation tickets or excursion passenger tickets: . . .''

This section of the constitution and this section of the public utilities act both refer to discriminating

charges, and the provision in each of these sections to the effect that excursion and commutation tickets may be issued at special rates was intended as an exception to these sections. The idea, no doubt, was that the privilege of the carrier to issue temporary excursion and commutation tickets was not to be taken away because such tickets might be held to be discriminatory. These sections leave the privilege with the carrier to issue such tickets at special rates at their discretion. Section 18 of article 12 of the constitution provides as follows:

"The legislature shall pass laws establishing reasonable maximum rates of charges for the transportation of passengers and freight, and to correct abuses and to prevent discrimination and extortion in the rates of freight and passenger tariffs on the different railroads and other common carriers in the state, and shall enforce such laws by adequate penalties. A railroad and transportation commission may be established, and its powers and duties fully defined by law."

In pursuance of that provision, the public service commission act was passed. That act, in defining the powers and duties of the public service commission, provides:

"All charges made for any service rendered or to be rendered in the transportation of persons or property, or in connection therewith, by any common carrier, or by any two or more common carriers, shall be just, fair, reasonable and sufficient." Rem. Code, § 8626-9.

"Every common carrier shall file with the commission and shall print and keep open to the public inspection schedules showing the rates, fares, charges and classification for the transportation of persons and property within the state between each point upon its route and all other points thereon; . . ." Rem. Code, § 8626-14.

"Whenever the commission shall find, after a hearing had upon its own motion or upon complaint, as

herein provided, that the rates, fares or charges demanded, exacted, charged or collected by any common carrier for the transportation of persons or property within the state or in connection therewith, or that the regulations or practices of such common carrier affecting such rates are unjust, unreasonable, unjustly discriminatory, or unduly preferential, or in any wise in violation of the provisions of law, or that such rates, fares or charges are insufficient to yield a reasonable compensation for the service rendered, the commission shall determine the just, reasonable or sufficient rates, fares or charges, regulations or practices to be thereafter observed and enforced and shall fix the same by order as hereinafter provided. . . .'' Rem. Code, § 8626-53.

In the case of *State ex rel. Webster v. Superior Court,* 67 Wash. 37, 120 Pac. 861, Ann. Cas. 1913D 78, L. R. A. 1915C 287, where the public service commission made an order directing a new schedule of rates for a telephone company which were higher than those fixed in the franchise theretofore granted by the city, we held that it was within the power of the state to regulate the rates by a commission under the public utilities act, authorizing the public service commission to fix reasonable rates and charges for public service corporations which are required to furnish adequate and sufficient service, and that the public service commission had power to require the telephone company to raise its rates above the maximum permitted by the city franchise. In that case we said:

"Rates cannot be arbitrarily fixed, but must be determined with reference to the conditions existing where they are to be put into execution. Manifestly a legislature could not, by special acts, fix these rates. The only practical method was—and it seems to have been foreseen by the makers of the constitution—to create a commission with power to ascertain what rate would be just and reasonable in each particular case, and to prescribe and enforce the same. *Interstate*

*Commerce Commission v. Chicago etc. R. Co.,* 218 U. S. 88; *Interstate Commerce Commission v. Chicago etc. R. Co.,* 218 U. S. 113. The power thus exercised by the commission is not a usurpation of legislative and judicial functions, nor does it unite in one body conflicting governmental authority. It consists simply in the ascertainment of facts upon which the general rule of the legislative body, and of the constitution prescribing that reasonable rates shall be adopted, operates."

And further on in that opinion, at page 55, we said:

"The power to fix rates, if exercised by a city, unless that power is clearly expressed by legislative grant, is in the nature of a license, and is revocable at the will of the legislature when, in its judgment, the common good demands its reassertion. The state does not act by contract, but by grant, license, or reservation. It is not usually bound by the contracts of others when exercising its police power. So jealous is it of the sovereignty of its police power that, in the case of the *Home Tel. Co. v. Los Angeles* [211 U. S. 265], the supreme court of the United States held that a grant by the legislature of the state of the right 'to fix and determine charges for telephone, telephone service, and connections,' did not carry with it the right to *agree* upon rates. In other words, as that court and others have universally held, the delegation of power must be 'clear and unmistakable.' In dealing with the sovereign power of the people, nothing can be left to inference. The court accordingly said that the power to fix and determine rates being within the police power, the city might *establish* rates, but that it could not, under the delegation quoted, *contract* so as to bind itself or the other party as against the exercise of the police power. In principle its holding could not have been otherwise, for the strength of the police power lies in the fact that it is not a subject of contract; that it cannot be bartered or bargained away."

So it seems clear that, under the powers given to the public service commission and under that de-

cision, the city of Seattle could not, by contract or otherwise, fix a permanent rate which could not be regulated by the public service commission. While the right is reserved to the railway company to issue commutation tickets for temporary periods, the power of the public service commission to fix or authorize a reasonable rate for permanent service still remains. In the case of *State. ex rel. Tacoma R. & Power Co. v. Public Service Commission,* 101 Wash. 601, 172 Pac. 890, we held that there was no power in the commission to. relieve the railway company from certain franchise provisions, because there was no power vested in the commission to relieve from those provisions; but the provisions under consideration in that case did not relate to rates or fares as in this case. In the case of *Raymond Lumber Co. v. Raymond Light & Water Co.,* 92 Wash. 330, 159 Pac. 133, L. R. A. 1917C 574, we said:

"The power to regulate and control the rates of public service corporations is within the legitimate exercise of the police power of the state. This power may be exercised by the legislature itself by enacting a law fixing rates, or the legislature may delegate the power to fix rates to a properly constituted commission, subject to judicial review. *State ex rel. Webster v. Superior Court,* 67 Wash. 37, 120 Pac. 861 [Ann. Cas. 1913D 78, L. R. A. 1915C 287]. In this state; the legislature has conferred the rate making power upon the public service commission by the public service commission law."

The statute (Rem. Code, § 8626-53) above quoted gives the control of rates and fares to the public service commission. Under that statute the power clearly rests in that commission to fix reasonable or sufficient rates at the request of the carrier, notwithstanding the franchise contract.

Upon the question whether the proof was sufficient to warrant the order of the public service commission, we think there can be no doubt. The evidence shows that the traction company and its street railway system were not receiving any net returns; that there was, in fact, a deficit at the time of the hearing, and, if depreciation is not considered or allowed for, the returns of the company would be less than two per cent upon the actual cost of the railway system. The trial court said:

"The findings and conclusions of the commission as to the facts are invested with the presumption of verity and no court would undertake to disturb them in this case. Respect is accorded to the judgment of those in whom the people by their own plan have placed it. It rather seems that petitioner is finding fault with the order complained of because the commission has never made its own independent valuation of the company's property and attention is called to § 8626-92, Rem. Code. The section provides: 'The commission shall ascertain, *as early as practicable,* the cost of construction and equipment, etc.' Obviously a valuation by the commission would be exceedingly helpful and dependable for rate-making purposes but surely this statute does not mean that the important work of rate control shall lie dormant until such expensive and arduous tasks shall have been completed. Especially not so in a case where by some other plan of determining valuation the commission is convinced it is entirely within the field of safety for the purposes of its order."

We are satisfied the trial court was right in its conclusion.

The order appealed from is therefore affirmed.

MAIN, C. J., CHADWICK, HOLCOMB, FULLERTON, PARKER, MACKINTOSH, and TOLMAN, JJ., concur.