[No. 22017. *En Banc.* April 16, 1930.]

PUGET SOUND NAVIGATION COMPANY, *Respondent*, v. THE DEPARTMENT OF PUBLIC WORKS *et al.*, *Appellants.*[1]

*The Attorney General, John C. Hurspool* and *H. C. Brodie, Assistants,* for appellant Department of Public Works.

*Philip D. Macbride* and *George W. Williams,* for appellants Ballard-Ludlow Ferry Co. *et al.*

*Bronson, Jones & Bronson* and *Bogle, Bogle & Gates,* for respondent.

[1]Reported in 287 Pac. 52.

MILLARD, J.—This is an appeal from a judgment of the superior court for Thurston county, reversing an order of the department of public works, which order amended a "good faith" steamboat certificate for service between Port Ludlow and Seattle to include ferry service in the amended certificate.

Chapter 248, Laws of 1927, p. 382, which became effective June 8, 1927, required steamboat companies thereafter operating to obtain a certificate of public convenience and necessity. The act also provided that a certificate should be granted to a steamboat company if on January 15, 1927, such company was actually operating in good faith over the route for which the certificate was sought.

In January, 1922, Otto Lorenz commenced the operation of steamboats as common carriers between Seattle and Port Ludlow. He was succeeded by the Port Ludlow-Kingston Transportation Company of which Lorenz is president. In 1927 Lorenz made application to the department of public works for freight, passenger and ferry steamboat certificate for service between Seattle and Port Ludlow, via Kingston, Eglon, Hansville, Port Gamble and intermediate points. The Sound Ferry Lines, Inc., which operates ferry lines between Edmonds and Port Ludlow and between Edmonds and Kingston, protested the application in so far as it included ferry service; contending that Lorenz had not supplied ferry service over that route. At the hearing before the department August 31, 1927, Lorenz, through his attorney, withdrew his application for the ferry service certificate. He was granted a good faith certificate authorizing freight and passenger service. Lorenz's Seattle terminal was at pier 3.

In January, 1929, the Port Ludlow-Kingston Transportation Company applied to the department

to amend Lorenz's steamboat certificate to include ferry service in addition to freight and passenger service. The Ballard-Ludlow Ferry Company at the same time applied for an amendment of the Lorenz certificate to include direct ferry service between Port Ludlow and Seattle. Permission was also requested to purchase the rights of the Port Ludlow-Kingston Transportation Company. No question was raised as to that portion of the department's order approving the transfer of the certificate rights to the ferry company.

The Puget Sound Navigation Company and the Sound Ferry Lines, Inc., protested against the application, contending, substantially, that neither of the appellants had ever operated ferry service as a good faith operation between Port Ludlow and Seattle; that appellants proposed a new character and class of service not permissible as an amendment to the service under the steamboat certificate of Lorenz; that the protestants had been serving the territory between Port Ludlow and Seattle, operating direct ferry service between Port Ludlow and Edmonds, handling principally traffic flowing between Port Ludlow and Seattle; that there was no demand for the service proposed, which would constitute an invasion of territory already served by the protestants.

Hearing was had before the department, which made its findings of fact and entered its order March 16, 1929, granting the applications. The department's findings of fact, so far as material, are as follows:

"Port Ludlow-Kingston Transportation Company is the owner and holder of S. B. C. Certificate No. 14, authorizing freight and passenger service by vessel between Seattle and Port Ludlow via Kingston, Eglon, Hansville, Port Gamble, and intermediate points.

"Application is now made to amend the certificate to authorize the furnishing of ferry service between Seattle and Port Ludlow and to transfer the amended

certificate to Ballard-Ludlow Ferry Company, a corporation. The service requested is in addition to the service rendered under S. B. C. Certificate No. 14 and would institute a service between a landing in that portion of Seattle known as Ballard and Port Ludlow. The application to amend the certificate so that the additional ferry service may be authorized is based on good faith operation on and prior to January 15, 1927, and on public convenience and necessity for the service proposed. No new route is to be established but rather an enlarged service to be given."

". . . The department is of the opinion that the application to amend certificate No. 14 to authorize ferry service between Seattle and Port Ludlow should be granted."

The department then expressed the opinion that the application should be granted; that the evidence indicated that on and prior to January 15, 1927, Lorenz, predecessor to Port Ludlow-Kingston Transportation Company, transported as freight all automobiles that were offered; and that such service as rendered by the applicant constituted ferry service entitling the operator to a ferry certificate.

The order entered by the department is to the effect that all rights under steamboat certificate No. 14, standing in the name of Port Ludlow-Kingston Transportation Company be transferred to the Ballard-Ludlow Ferry Company; that the application for amendment be granted and certificate No. 14 amended to authorize direct ferry service between Seattle and Port Ludlow in addition to the service now rendered.

The application of Lorenz in 1927 and the applications in 1929 of the transportation and ferry companies were in each instance for service over the same route over which Lorenz and his successors had operated passenger and freight service since 1922; that is, from pier 3 in Seattle to Port Ludlow via Kingston, Eglon, Hansville, Port Gamble and intermediate points.

The ferry company was also authorized under the certificate granted by the department's order of March 16, 1929, to furnish additional ferry service between a ferry landing in that part of Seattle known as Ballard and Port Ludlow. Under the department's order, the ferry company will operate from pier 3 to Port Ludlow, via the points named, passenger, freight and ferry service; and operate an additional service direct from the ferry landing at Ballard, which is within the corporate limits of Seattle, to Port Ludlow. No stops will be made between Seattle and Port Ludlow on this additional or through service, which is over a route practically parallel with the same route over which Lorenz and his successors have operated since 1922. The differences are that the improved service is a through or direct service from Seattle to Port Ludlow, and the Seattle terminus of the route will be at Ballard, approximately seven nautical miles north of the ferry company's present terminus at pier 3 in Seattle. Lorenz and his successors have heretofore supplied a direct or through service from pier 3 in Seattle to Port Ludlow, Saturday and Sunday of each week for convenience of their patrons.

Upon petition of the Puget Sound Navigation Company, the order of the department was reviewed by the superior court for Thurston county. The court reversed the order and expressed the view

". . . that the record shows not only that the territory is served by petitioner herein, but, also, that the order of the department attempting to amend the certificate of the respondents is in fact not an amendment, but, the granting of a certificate for a ferry service."

Was Lorenz in fact supplying such service January 15, 1927, as entitled him, under the provisions of ch. 248, Laws of 1927, p. 382, to a good faith ferry

certificate for service over the route from pier 3 in Seattle to Port Ludlow via intermediate points?

The statute provides that:

"No steamboat company shall hereafter operate any vessel or ferry for the public use for hire  . . . without first applying for and obtaining from the department the certificate declaring that public convenience and necessity require such operation.  ۹  . . . A certificate shall be granted when it shall appear to the satisfaction of the department that such steamboat company was actually operating in good faith over the route for which such certificate shall be sought, on January 15, 1927:  . . ." Laws of 1927, ch. 248, p. 382, § 1 [Rem. 1927 Sup. § 10361-1].

From 1922 to date of the 1927 hearing, Lorenz carried automobiles and other vehicles, classifying the same as freight. Only passengers and freight were carried on the boats of Lorenz. He had only a freight and passenger tariff and made no pretense of operating a ferry. He had no equipment that could be classed as a ferry. Such vehicles as were carried on his steamers were shipped as freight and loaded on the boat as other freight, being placed aboard the steamer by aid of ropes and other cargo gear. It appears from the evidence that, subsequent to the year 1924, the number of automobiles carried by the steamers was negligible. Four steamers were operated by Lorenz during the period mentioned. The revenue derived from the transportation of automobiles was included in general freight earnings in the return made to the department.

In enacting ch. 248, Laws of 1927, p. 382, requiring steamboat companies operating any *vessel or ferry* to obtain authority to continue operations, the legislature doubtless had in mind what a ferry is. The legislature, no doubt, contemplated that some companies would restrict their service to passengers and

freight, while others would render ferry service only, and still others would combine the three services.

A steamer transporting passengers and freight and operated under a passenger and freight certificate, is not a ferry in common and legal parlance. If Lorenz had not carried any passengers and charged only for freight, it could not be logically argued that he was operating a passenger or ferry boat. The fact that a portion of the freight carried consisted of automobiles and other vehicles would not thereby transmute the service into passenger or ferry service. That Lorenz carried passengers and freight, is not in aid of the argument that Lorenz maintained a ferry.

A ferry, in a strict technical sense,

". . . is a continuation of the highway from one side of the water over which it passes to the other, and is for the transportation of passengers, or of travelers with their teams and vehicles and such other property as they may carry or have with them. . . . In a strictly ferry business, property is always transported only with the owner or custodian thereof; and ferrymen who do nothing but a ferry business, and have nothing but a ferry franchise are bound to transport no other property; . . . But they may combine, and usually do combine, with the ferry business, the business of a common carrier, carrying freight and merchandise without the presence of the owner or custodian like other carriers engaged in the transportation of such freight; . . . As ferrymen they are under a public duty to transport with suitable care and diligence all persons with or without their vehicles and other property; and as common carriers, it is their duty to carry all freight and merchandise delivered to them." *Mayor, etc. of New York v. Starin,* 106 N. Y. 1, 12 N. E. 631.

Lorenz did not hold himself out as a ferry operator. No ferry tariff was posted by him. For all automobiles and other vehicles carried on his steamers he received

the rate fixed by the freight tariff under which he operated. The revenue derived from such service was classified by him as freight in the return he made to the department. *Broadnax v. Baker,* 94 N. C. 675, 55 Am. Rep. 633, differs not in principle from the case at bar. In that case, it was held that, where one did not carry passengers for toll and charged only for freight carried up and down the river between a railroad and numerous landings above, such person in no sense maintained a ferry. Clearly, Lorenz was not entitled to a good faith ferry certificate.

The superior court reversed the order of the department upon the ground that the ferry service authorized by the certificate granted to the appellants was an invasion of territory already served by the respondent. That was a point upon which the department decided it was unnecessary to pass, holding that the service proposed was not the inauguration of a new service, but was an improved or extended service properly authorized through amendment of an existing certificate. It is true that the department made an incidental finding that public convenience and necessity required a ferry service between Port Ludlow and Seattle as proposed by the applicant, but that such finding was not required for a determination of the issues raised by the application.

██ Not being entitled to a ferry certificate by reason of good faith operation on January 15, 1927, over the route for which the certificate was sought, a ferry certificate could not be granted by the department until it had tried out and determined whether the operation thereunder would invade territory already served.

"The department shall not have power to grant a certificate to operate between districts and/or into ter-

ritory already served by an existing certificate-holder, . . ." Laws of 1927, ch. 248, § 1.

The superior court was in error in deciding the case upon a point upon which the department had not passed.

"It seems to us that the lawful inquiry upon review in the superior court is only with reference to a question or questions, which have actually been passed upon by the state department. When that department decided that it was unnecessary to determine whether or not the particular district or territory was already being served, and the superior court found that such fact must be decided, it was for the court to remand the proceedings to the department with instructions to so decide and not for the court to decide the question in the first instance. The law contemplates that the state department shall have exclusive original jurisdiction subject only to the review by the courts, and if we were to say that the superior court could decide facts not decided by the state department, we would be granting to those courts original jurisdiction, and this, we feel would be going clearly beyond both the letter and spirit of the law. If the lower court felt, as it evidently did feel, which seems to be a correct decision, that the question of whether or not the territory was already being served, was involved in this controversy, then it should have been remanded with instructions to the department to ascertain this fact and make its order accordingly." *Puget Sound Navigation Co. v. Dept. of Public Works,* 152 Wash. 417, 278 Pac. 189.

The cause is remanded with instructions to the superior court to refer the matter to the department with directions to grant a rehearing on the question of whether the applicant is seeking a certificate for territory already served.

All concur.