[No. 22078.   Department Two.   April 24, 1930.]

PUGET SOUND NAVIGATION COMPANY, *Respondent*, v.
DEPARTMENT OF PUBLIC WORKS *et al., Appellants,*
J. S. ROBINSON, *as Receiver, Respondent.*[1]

*The Attorney General, John C. Hurspool,* and *H. C.
Brodie, Assistants,* for appellant Department of Public Works.

*Cleland & Clifford,* for appellant Olympic Peninsula
Motor Coach Co.

*Bronson, Jones & Bronson,* for respondent Puget
Sound Navigation Co.

*Robert E. Bronson* and *W. H. Gorham,* for respondent Robinson.

[1]Reported in 287 Pac. 672.

MAIN, J.—This is an appeal from a judgment of the superior court setting aside an order of the department of public works. The facts which will present the questions to be decided may be stated as follows:

On the north end of the Olympic Peninsula, which is to the west of Puget Sound, there are many small farms or ranches, much of the products of which are carried to the Seattle market by auto trucks. The Sound Ferry Lines, a corporation, operates a steamboat from Port Ludlow on the west side of Puget Sound to Edmonds on the east, and furnishes a passenger, freight and ferry service. The Puget Sound Navigation Company operates a number of boats from Seattle to points on the west side of Puget sound and is a competitor of the Ferry Lines for the business to and from the north end of the Olympic Peninsula. The Wolverton Auto Bus Company, a corporation, operates trucks and stages from various points in the Olympic Peninsula by way of Port Ludlow and Edmonds into Seattle. From Port Ludlow to Edmonds, the Sound Ferry Lines furnishes a ferry service which transports the trucks and stages across Puget Sound between those two points.

January 15, 1926, the ferry company filed with the department of public works its tariff No. 3, naming fares and rates on motor vehicles and other commodities between Port Ludlow and Edmonds. This tariff contained the following provision:

"Trucks—N. O. S. loaded or light—per 100 lbs...05*
"Minimum Charge ........................2.25*
"*This charge is to be assessed on the combined weight of the truck and contents or on the weight of the truck when no load is carried and applies on one way movement only."

It will be observed from this tariff the rate on trucks, loaded or light, was five cents per hundred

pounds, with a minimum charge of $2.25. Subsequently the ferry company filed supplemental tariff No. 1 to tariff No. 3, which became effective December 1, 1926, which contained the following rate:

"Edmonds-Port Ludlow Route.
"Commutation rates for trucks:
"Commutation books containing sixty (60) single trip tickets, good for use of original purchaser only, within thirty (30) days from date of sale. (Rate includes truck and load) ........................$225
"Note: The above commutation rate is applicable to trucks weighing not to exceed 10,100 pounds when empty."

This supplemental tariff, by use of commutation books, authorizes sixty single trips within thirty days upon trucks, whether loaded or unloaded, for the sum of $225.

Shortly prior to September 26, 1928, the Ferry Lines filed with the department supplemental tariff No. 2 to tariff No. 3, which contained this provision:

"Edmonds-Port Ludlow Route.
"(Certificate No. 7)
"Cancel Supplement No. 1 to Tariff No. 3, W. D. P. W. No. 3 naming commutation rates on trucks; leaving no such rate in effect."

By supplemental tariff No. 2 to tariff No. 3, it appears that supplemental tariff No. 1, which authorized commutation rates, was set aside. After supplemental tariff No. 2 was filed, the Wolverton Auto Bus Company filed a protest thereto, and thereafter the Puget Sound Navigation Company intervened. A hearing was had before the department, which resulted in an order canceling supplemental tariff No. 2 and directing that supplemental tariff No. 1 be reinstated and continued in effect. The effect of this order was to restore the commutation rate as provided for in supplemental tariff No. 1. The order of the department was taken

before the superior court for review and resulted in a judgment, as above stated, setting aside the order of the department. From this judgment, the department of public works and the Wolverton Auto Bus Company appeal.

The first question is whether the right to issue commutation tickets is limited to the carrying of passengers alone or whether it may include vehicles and freight. Section 15, of article XII, of the constitution of this state, provides:

"No discrimination in charges or facilities for transportation shall be made by any railroad or other transportation company between places or persons, or in the facilities for the transportation of the same classes of freight or passengers within this state, or coming from or going to any other state. Persons and property transported over any railroad, or by any other transportation company, or individual, shall be delivered at any station, landing, or port at charges not exceeding the charges for the transportation of persons and property of the same class, in the same direction, to any more distant station, port, or landing. Excursion and commutation tickets may be issued at special rates."

It will be noted that the first sentence in this section provides that there shall be no discrimination in charges by a transportation company between "freight or passengers." The second sentence provides that "persons and property" carried by any transportation company shall be delivered at any station or landing at charges not exceeding the charges for the transportation of "persons and property" of the same class. There appears to be no distinction, so far as that section of the constitution provides, between "persons" and "property," which words are used twice with the conjunction "and" between them. When reference is made to "freight or passengers," the disjunctive is

used, likewise showing no distinction. By the last sentence in the section, "commutation tickets" are permitted to be issued. There is nothing in the language used in the section which would indicate that commutation tickets were to be limited to passengers or persons and not applied to freight or property.

In *State ex rel. Seattle v. Public Service Commission,* 103 Wash. 72, 173 Pac. 737, it was held, construing this section of the constitution, that the issuing of commutation tickets was intended to be an exception to what had preceded it. It was there said:

"This section of the constitution and this section of the public utilities act both refer to discriminating charges, and the provision in each of these sections to the effect that excursion and commutation tickets may be issued at special rates was intended as an exception to these sections. The idea, no doubt, was that the privilege of the carrier to issue temporary excursion and commutation tickets was not to be taken away because such tickets might be held to be discriminatory. These sections leave the privilege with the carrier to issue such tickets at special rates at their discretion."

It is true that in that case the court was considering commutation tickets as applied to persons or passengers, but if commutation tickets as applied to persons and passengers was intended as an exception to what had preceded it, then it would seem to necessarily follow, in view of the prior language in the section, that the commutation tickets were intended as an exception also as applied to freight and property. The words "commutation tickets" do not appear to have any very definite meaning and consequently cannot be held to apply to passenger traffic alone. In *Interstate Commerce Commission v. Baltimore & Ohio R. Co.,* 145 U. S. 263, it was said:

"The words 'commutation ticket' seem to have no definite meaning. They are defined by Webster (edi-

tion of 1891) as 'a ticket, as for transportation, which is the evidence of a contract for service at a reduced rate.' "

If commutation tickets were limited to persons or passengers, then it would necessarily follow that no vehicle could be transported on a ferry or over a toll bridge at less than the regular one-way rate, even though such vehicle were making a number of trips a day or many trips a month, because the same rule would apply to a toll bridge as to a ferry. A ferry in its ordinary sense is but a substitute for a bridge where a bridge is impractical, and its end and use is the same.

In *State ex rel. United Rys. Co. v. Wiethaupt,* 231 Mo. 449, 133 S. W. 329, it is said:

"The idea of a ferry presupposes a road traveled by the public which is bisected by the watercourse, the ferry serving in a different way, the same purpose that is served by a bridge. As the bridge is made for the road, not the road for the bridge, so is the ferry made for the road, not the road for the ferry; the ferry is the incident, the road is the principal."

There are many other cases to the same effect, but they need not be assembled here.

A construction of the constitution which would prevent the giving of a commutation rate upon a toll bridge or a ferry for freight or property would be too limited and restricted, and would be a construction not in harmony with the language used or with present-day conditions. We are of the opinion that it was not the intention of the framers of the constitution to limit commutation tickets to passengers or persons only, but it was the intention that such tickets might be used for the transportation of property or freight.

The next question is whether supplemental tariff No. 1, which authorizes the commutation rate

for trucks loaded or unloaded, is an unjust discrimination in rates. Section 10356, Rem. Comp. Stat., provides:

"No common carrier shall, directly or indirectly, by any special rate, rebate, drawback, or other device or method, charge, demand, collect or receive from any person or corporation a greater or less compensation for any service rendered or to be rendered in the transportation of persons or property except as authorized in this act, than it charges, demands, collects or receives from any person or corporation for doing a like and contemporaneous service in the transportation of a like kind of traffic under the same or substantially similar circumstances and conditions."

Here is a statute which prohibits discrimination in transportation rates "for doing a like and contemporaneous service in the transportation of a like kind of traffic under the same or similar circumstances and conditions." Transportation service furnished upon commutation tickets is a special and distinct kind of service. In the *Commutation Rate Case,* 21 I. C. C. 428, it was said:

"Without going further into the history of commutation or the details that distinguish it from other passenger traffic we are led to conclude from all these considerations that it stands by itself as a special and distinct kind of service for which the carrier may demand no more than a reasonable compensation."

The holding of the Interstate Commerce Commission in that case was approved in *Pennsylvania R. Co. v. Towers,* 126 Md. 59, 94 Atl. 330, Ann. Cas. 1917B 1144. In *Pennsylvania R. Co. v. Towers,* 245 U. S. 6, the holding of the court of appeals of Maryland was sustained, and it was there said:

"In our opinion the rate for a single fare for passengers generally may be varied so as to fit the particular and different service which involves, as do commutation rates, the disposition of tickets to passengers

who have a peculiar relation to the service. The service rendered in selling a ticket for one continuous trip is quite different from that involved in disposing of commutation tickets where a single ticket may cover 100 rides or more within a limited period. The labor and cost of making such tickets as well as the cost of selling them is less than is involved in making and selling single tickets for single journeys to one-way passengers.

"The service rendered the commuter, carrying little baggage and riding many times on a single ticket for short distances, is of a special character and differs from that given the single-way passenger.

"It is well known that there have grown up near to all the large cities of this country suburban communities which require this peculiar service, and as to which the railroads have themselves, as in this instance, established commutation rates. After such recognition of the propriety and necessity of such service, we see no reason why a state may not regulate the matter, keeping within the limitation of reasonableness.

"On the strength of these commutation tariffs, it is a fact of public history that thousands of persons have acquired homes in city suburbs and nearby towns in reliance upon this action of the carriers in fixing special rates and furnishing particular accommodations suitable to the traffic. This fact has been recognized by the courts of the country, by the interstate commerce commission, and quite generally by the railroad commissions of the states."

What is there said, while referring to passenger traffic, is equally applicable to the carrying of freight, where, as we have above seen, commutation rates may be made for freight as well as passenger traffic. If the service furnished upon the commutation rate is a special and distinct service, as we have found, then it is of a kind different from the ordinary traffic and is not carried on under the same or substantially the same circumstances and conditions. If equal treat-

ment be accorded all persons, localities and descriptions of traffic, whose relations to the shipping carrier are like and similar, then there is no discrimination.

In *Public Service Commission v. Northern Pacific R. Co.*, 77 Wash. 635, 138 Pac. 270, it is said:

"The only alternative rule, then, is to require equal treatment for all persons, localities and descriptions of traffic whose relations to the shipping carrier are like and similar."

In the present case, under supplemental tariff No. 1, the ferry company sold commutation tickets to all persons who applied, and, in fact, had sold them to five different operators of freight trucks. There is no difference in principle between the carrying of freight upon a truck at a commutation rate and a producer who hauls the products of his ranch or farm to market daily in his automobile. If a commutation ticket cannot be issued for one, it cannot be issued for the other. The difference is one of degree and not of kind. It cannot be held that the giving of commutation rates for trucks loaded, which are made to all persons who come within the class which furnish a special and distinct kind of service as distinguished from the regular and ordinary service, is an unjust discrimination.

The question is not now presented whether it is within the power of the department of public works to require the establishment of a schedule of commutation rates by a transportation company in a case where no such rates had theretofore existed, and we express no opinion upon that question.

The judgment of the superior court will be reversed and the cause remanded with direction to enter a judgment affirming the order of the department of public works.

MITCHELL, C. J., FRENCH, FULLERTON, and HOLCOMB, JJ., concur.