[No. 23090.   *En Banc.*   December 11, 1931.]

THE STATE OF WASHINGTON, *on the Relation of the Puget Sound Navigation Company et al., Appellants,* v. THE DEPARTMENT OF PUBLIC WORKS *et al., Respondents.*[1]

*Bogle, Bogle & Gates, Lawrence Bogle,* and *Edward G. Dobrin,* for appellants.

*The Attorney General* and *John C. Hurspool, Assistant,* for respondent The Department of Public Works.

*Philip D. Macbride* and *George W. Williams,* for respondent Ballard-Ludlow Ferry Company.

[1]Reported in 6 P. (2d) 55.

PARKER, J.—This is an appeal to this court in behalf of the Puget Sound Navigation Company and its associate, the Sound Ferry Lines, Inc., relators in the superior court, from a judgment of that court affirming an order and decision of the department of public works granting to the Ballard-Ludlow Ferry Company and its associate, the Port Ludlow-Kingston Transportation Company, a certificate of public convenience and necessity, authorizing them to maintain for public use a ferry across Puget Sound between Seattle and Port Ludlow. The interests of the former in this controversy are in common. We shall hereafter refer to them as appellants. The interests of the latter in this controversy are in common. We shall hereafter refer to them as respondents.

Appellants seek reversal of the order and decision of the department and reversal of the judgment of the superior court affirming the order and decision of the department, upon the theory that the granting of the certificate of public convenience and necessity asked for by respondents is, in effect, the granting of a certificate of public convenience and necessity to maintain and operate a ferry between districts already served under an existing certificate of public convenience and necessity held by them, under which they operate a ferry service between Edmonds, a point some sixteen miles north of the business center of Seattle, and Port Ludlow; and is also the granting of a certificate not required by public convenience and necessity.

Since prior to January, 1929, respondents have had such interest in common in a good faith certificate of public convenience and necessity authorizing them to maintain a steamboat freight and passenger service between a landing near the central business district of Seattle and Port Ludlow by way of the intermediate points of Kingston, Eglon and Hansville, that we may,

for present purposes, regard them as owners in common of that certificate. That steamboat service has, since sometime prior to the enactment of chapter 248, Laws of 1927, p. 382, our steamboat certificate law, been maintained by them or by their predecessor in interest.

In January, 1929, respondents applied to the department of public works for amendment of their certificate so as to authorize them to include in their service ferry service between Seattle and Port Ludlow, contemplating making the Seattle landing of that service at that portion of Seattle known as Ballard, some six miles northwesterly from the central business district of Seattle.

Since prior to January, 1929, appellants have had such interest in common in a good faith certificate of public convenience and necessity authorizing them to maintain and operate a ferry service between Edmonds and Port Ludlow, that we may, for present purposes, regard them as owners of that certificate. That service has been maintained by them, or one of them, since prior to the enactment of chapter 248, Laws of 1927, p. 382, our steamboat certificate law.

Appellants filed with the department their protest against the granting of respondents' application for an amended certificate; the ground of the protest being, in substance, that appellants were already serving under a certificate of public convenience and necessity territory which included Seattle with adequate ferry service to and from Port Ludlow, by the maintenance of their ferry service between Edmonds and Port Ludlow, Edmonds being some sixteen miles north of the central business district of Seattle and connected therewith by good paved highways.

The application and protest came on regularly for hearing before the department, at which a large

amount of evidence was introduced touching the question of respondents' right to such amended certificate as an expansion of the service already rendered by them; the question of there being a required public convenience and necessity for such additional service; and the question of whether or not Seattle, including Ballard, is within the territory served by appellants' ferry, in the sense that the granting of the amended certificate, as asked for by respondents, would unlawfully invade that territory as territory already served by appellants' ferry.

Following that hearing, the department made findings, reciting, in part, as follows:

"The application to amend the certificate so that the additional ferry service may be authorized is based on good faith operation on and prior to January 15, 1927, and on public convenience and necessity for the service proposed. No new route is to be established but rather an enlarged service to be given.

. . . . . . . . . . . . .

"The department is of the opinion that the application to amend Certificate No. 14 to authorize ferry service between Seattle and Port Ludlow should be granted. . . .

"The department is of the further opinion that public convenience and necessity require the ferry service between Port Ludlow and Seattle proposed by the applicant, . . ."

and rendered its order and decision, in part, as follows:

"It is Further Ordered That the application for amendment herein be granted and said S. B. C. Certificate No. 14 amended to authorize ferry service between Seattle and Port Ludlow, Washington, in addition to the service now rendered."

The department did not make any specific finding as to whether or not Seattle was territory already served by appellants' ferry; evidently proceeding upon the theory that respondents had the right to have their

certificate amended as asked for, because of the nature of their service since prior to the enactment of chapter 248, Laws of 1927, p. 382, above noticed; that is, because such service had been in a substantial measure ferry service.

Appellants thereupon, by appropriate review proceedings, brought that order and decision of the department into the superior court seeking review and reversal thereof. Upon the hearing accordingly had in the superior court upon the record made before the department, including the voluminous evidence there introduced, that court reversed and set aside the order and decision of the department, doing so, as evidenced by its memorandum opinion, preliminary to the rendering of formal judgment, upon the theory that Seattle, including Ballard, was territory already served by appellants' ferry; though, as above noticed, that was not a question upon which the department had made any finding.

Thereupon respondents appealed from that judgment to this court, and thereafter in due course this court rendered its decision, reported in 156 Wash. 377, 287 Pac. 52, reversing the judgment of the superior court and remanding the cause to that court with directions that it remand the cause to the department "with directions to grant a rehearing on the question of whether the applicant is seeking a certificate for territory already served," that being a question to be decided in the first instance by the department, and a question which it had not decided in this controversy and which, therefore, the superior court was not authorized to decide upon review of the department's order and decision.

Thereafter, the matter, having been remanded by the superior court to the department as directed by this court, came on for rehearing before the depart-

ment. All of the evidence introduced upon the prior hearing was considered by the department, together with much additional evidence then introduced, more particularly touching the question of Seattle being territory already served by appellants' ferry. Following that hearing, the department made findings in effect adopting its prior finding upon the question of required public convenience and necessity calling for the proposed new ferry service, and further found, in part, as follows:

"Protestant's chief contention is that the territory proposed to be served is now being served by Edmonds-Ludlow ferry . . .

"The department is of the opinion that the Edmonds-Ludlow ferry is not furnishing service between Seattle or Ballard and Ludlow within the meaning of the statute. Edmonds is an incorporated city located in Snohomish county, sixteen miles north of Seattle and about the same distance south of Everett. Although the record is silent, the department of its own knowledge is aware that Edmonds has its own business and commercial life as independent of Seattle as is Everett. It is in no sense a part of the Seattle district unless all of the area between Everett and Tacoma can be called the Seattle district. . . .

"Seattle has a population of more than 300,000, a majority of which live north of Lake Union and the Canal. · More than 50,000 people live in the Ballard district bounded on the south by the Canal and on the east by Phinney Ridge. The Ballard district, although included within the municipal limits of Seattle, is in many ways a separate community. It has its own banks, retail stores, jobbing and wholesale houses, cold storage plants, manufacturing and industrial establishments, commercial club and other activities. The Port Commission of Seattle has included as a part of its comprehensive scheme the construction and development of ferry terminals at Ballard. Ballard has a natural harbor, protected from the prevailing winter winds and reached by streets on a water grade.

"The Olympic peninsula has a population of nearly 30,000, . . ."

Following these findings and others of much greater detail, the department rendered its order and decision as follows:

"WHEREFORE IT IS ORDERED That application for amendment herein be granted and that Certificate S. B. C. No. 14 standing in the name of the Ballard-Ludlow Ferry Company be amended to authorize ferry service between Ballard and Port Ludlow, Washington, in addition to the service now rendered."

Thereafter, appellants, by appropriate review proceedings, brought that order and decision of the department into the superior court seeking review and reversal thereof. In due course, following a hearing in that court upon the record of the controversy made in the department, including all of the evidence there introduced upon both hearings, the superior court rendered its judgment affirming the order and decision of the department granting to respondents a certificate of public convenience and necessity authorizing them to establish and maintain the proposed steamboat ferry service between Ballard and Port Ludlow. From that judgment, appellants have appealed to this court seeking reversal thereof, and, in turn, reversal of the order and decision of the department. This is the appeal with which we are here directly concerned.

At the risk of seeming to unnecessarily repeat, we here further outline the geography of this controversy. The Olympic Peninsula, with a population of some 30,000 inhabitants, lies to the west of Puget Sound. Port Ludlow on the west shore of Puget Sound is the main gateway port of the Olympic Peninsula from the east side of Puget Sound. Indeed, it is the only port on the extreme easterly edge of the Olympic Peninsula having direct boat service with the easterly

shore of Puget Sound at Edmonds or Seattle, or in their vicinity.

Seattle, with a population of some 350,000 inhabitants, is situated on the east shore of Puget Sound. Ballard, a part of Seattle, with a population of some 50,000 inhabitants, is situated on the east shore of Puget Sound, some six miles in a northerly and westerly direction from the main business district of Seattle. Edmonds is situated on the east shore of Puget Sound, some sixteen miles north of the main business district of Seattle and some ten miles north of Ballard. The territory immediately surrounding Seattle adds many thousands of inhabitants to that metropolitan center.

The route of appellants' ferry between Edmonds and Port Ludlow runs in a general northwesterly and southeasterly direction, and is approximately fourteen miles long. The route of respondents' proposed ferry between Ballard and Port Ludlow will run not so nearly in a northwesterly and southeasterly direction, and will be approximately twenty-two miles long; this because of Ballard being some ten miles south of Edmonds. These two ferry routes will be the only direct ferry routes between Port Ludlow and the territory in the vicinity of Edmonds and Seattle on the east shore of Puget Sound.

■ Counsel for appellants invoke the provision of chapter 248, Laws of 1927, p. 382, Rem. 1927 Sup., § 10361-1, our steamboat certificate law, reading as follows:

" . . . the department shall not have power to grant a certificate to operate between districts and/or into any territory already served by an existing certificate-holder, . . ."

and argue that the facts of this case show that appellants' existing ferry between Edmonds and Port

Ludlow already serves the whole of the territory of both Edmonds and Seattle and their vicinities.

It is true that appellants' ferry does serve the territory of Seattle and its vicinity as well as that of Edmonds and its vicinity, but appellants' ferry also in a sense serves a vastly greater territory than that in the vicinity of Seattle and Edmonds. We are of the opinion that it will not do to carry this argument to the extent sought by counsel for appellants. Because a large, extensive and populous territory is being served by a single ferry, such ferry does not thereby necessarily have a monopoly upon the whole of such territory to the extent that it must be held to be serving that territory to the exclusion of the establishing of some new ferry service at some other place therein advantageous to the public.

The view of the law which we regard as applicable to this and similar controversies was well stated by Judge French, speaking for the court, in *Puget Sound Nav. Co. v. Department of Public Works,* 152 Wash. 417, 278 Pac. 189, as follows:

"The question, what is territory already served, is a question of fact. Before that fact can be determined, it requires consideration of economic conditions, ofttimes involving expert testimony; a consideration of the kinds, means and methods of travel; the question of population warranting additional facilities for transportation, or the possibilities of the additional means of transportation increasing the population . . . ."

We do not overlook the fact, apparently shown by the evidence, that some ninety per cent of the ferry traffic over appellants' ferry between Edmonds and Port Ludlow has been and is traffic between Seattle and Port Ludlow. By ferry traffic we mean, of course, wheeled vehicle traffic capable of being driven on and off the ferry. This condition, we think, is far from con-

clusive that Seattle, including Ballard, is territory already served by appellants' ferry, in the sense that that territory should not be directly served by respondents' proposed service between Ballard and Port Ludlow. Our decision in *North Bend Stage Line v. Department of Public Works,* 162 Wash. 46, 297 Pac. 780, and our other decisions therein noticed, lend support to this conclusion.

We conclude that the order and decision of the department last rendered by it, and the judgment of the superior court affirming that order and decision, must be affirmed. It is so ordered.

MAIN, HOLCOMB, BEALS, BEELER, and HERMAN, JJ., concur.

MILLARD, J. (dissenting)—On the former appeal (*Puget Sound Navigation Co. v. Department of Public Works,* 156 Wash. 377, 287 Pac. 52), the judgment was reversed and the cause remanded for rehearing by the department on the question of whether the Ballard-Ludlow Ferry Company was seeking a certificate to operate a ferry in territory already served.

The steamboat certificate statute (ch. 248, Laws 1927) provides that

" . . . the department shall not have power to grant a certificate to operate between districts and/or into any territory already served. . . ."

In protecting from competition an established carrier occupying a given territory, it was the legislative purpose, as plainly expressed by the language of our statute regulating common carriers, to enable the established carrier to more efficiently and at a more reasonable rate serve the public than it could do if other competing lines were authorized to serve the public in the same territory. An apt statement of the policy of such enactments was made by the supreme

court of Illinois in *West Suburban Transportation Co. v. C. & W. T. Ry. Co.*, 309 Ill. 87, 140 N. E. 56, as follows:

"It is not the policy of the Public Utilities act to promote competition between common carriers as a means of providing service to the public. The policy established by that act is, that through regulation of an established carrier occupying a given field and protecting it from competition it may be able to serve the public more efficiently and at a more reasonable rate than would be the case if other competing lines were authorized to serve the public in the same territory. Methods for the transportation of persons are established and operated by private capital as an investment, but as they are public utilities the state has the right to regulate them and their charges, so long as such regulation is reasonable. . . . Where one company can serve the public conveniently and efficiently it has been found from experience that to authorize a competing company to serve the same territory ultimately results in requiring the public to pay more for transportation, in order that both companies may receive a fair return on the money invested and the cost of operation."

The ascertainment of whether a proposed new service is between districts already served is the decision of an issue of fact. The determination of that question must be made by the department in the first instance. The findings of the department are presumptively correct.

"The question, what is territory already served, is a question of fact. Before that fact can be determined, it requires consideration of economic conditions, ofttimes involving expert testimony; a consideration of the kinds, means and methods of travel; the question of population warranting additional facilities for transportation, or the possibilities of the additional means of transportation increasing the population so as to ultimately make the venture a success. . . .

All such questions must be determined in the first instance by the department. . . . 'Such decisions are peculiarly within the province of the commission to make, and its findings are fortified by presumptions of truth due to the judgment of a tribunal appointed by law and informed by experience.' " *Puget Sound Navigation Co. v. Department of Public Works,* 152 Wash. 417, 278 Pac. 189.

Though the findings of the department are presumed to be correct, it must be borne in mind that on appeal the evidence will be considered *de novo,* and if, upon consideration of all the evidence, we determine the facts are contrary to the conclusions arrived at by the department, the cause will be remanded with directions to the superior court to reverse the order of the department. *Pacific Northwest Traction Co. v. Department of Public Works,* 151 Wash. 659, 276 Pac. 566.

Do the facts afford a reasonable basis for the order made by the department? Unless the facts clearly disclose that the certificate was granted for the rendering of ferry service in territory already served by the appellants, that question must be answered in the affirmative, and the judgment should be affirmed.

The department found that the territory proposed to be served by the Ballard-Ludlow Ferry Company was not served by the Edmonds-Ludlow Ferry and by the Seattle-Port Townsend-Port Angeles ferries of the Puget Sound Navigation Company and the Sound Ferry Lines; that, while Port Ludlow, Port Townsend and Port Angeles are all located on the Olympic Peninsula, and a traveler could reach that peninsula by taking either the Bremerton ferry or the Seattle-Port Townsend-Port Angeles ferry, those routes were entirely distinct from the route proposed by the applicant and the service was radically different.

I am of the opinion that the territory proposed to be served is now served by the Edmonds-Ludlow ferry, and that the installation of the proposed service would have the effect of dividing the business. The evidence is clear that only about two per cent of the traffic handled by the Edmonds-Port Ludlow ferry is local traffic to or from Edmonds and Port Ludlow. More than ninety per cent of the traffic originates in Seattle, and approximately an equal percentage of the Edmonds-bound business is destined for Seattle. Ballard is the nearest portion of Seattle to Edmonds, and is within the district served by the Edmonds-Ludlow ferry. The terminals of the Ballard-Ludlow Ferry Company will be Port Ludlow, on the Olympic Peninsula, and Ballard, which is a part of the city of Seattle. The termini of the appellants are Port Ludlow, on the Olympic Peninsula, and Edmonds, Snohomish county. One of the terminals of each of the ferries is Port Ludlow.

The distance from Edmonds to Port Ludlow is sixteen nautical miles; from Ballard to Port Ludlow twenty-two or twenty-three nautical miles. A twelve-knot ferry requires an hour and twenty minutes to traverse the distance from Ludlow to Edmonds, and one hour and fifty-seven minutes from Ludlow to Ballard. Edmonds is about fourteen miles north of the main portion of Ballard, or about twenty-one minutes distance by car. Edmonds is sixteen miles north of the downtown section of Seattle, or twenty-nine minutes by car. From the main portion of Ballard to the central part of the downtown section of Seattle, the distance is seven miles, or, measured by time, seventeen minutes by car.

"A ferry in its ordinary sense is but a substitute for a bridge where a bridge is impractical, and its end and use is the same.

"In *State ex rel. United Rys. Co. v. Wiethaupt,* 231 Mo. 449, 133 S. W. 329, it is said:

" 'The idea of a ferry presupposes a road traveled by the public which is bisected by the watercourse, the ferry serving in a different way, the same purpose that is served by a bridge. As the bridge is made for the road, not the road for the bridge, so is the ferry made for the road, not the road for the ferry; the ferry is the incident, the road is the principal.' " *Puget Sound Navigation Co. v. Department of Public Works,* 156 Wash. 489, 287 Pac. 672.

The proposed Ballard-Ludlow ferry would be a substitute for a bridge between those two points. Treating the Edmonds-Ludlow ferry as a substitute for a bridge, the evidence discloses that the two ferries, or substitutes for bridges, are sixteen miles apart, and that they practically parallel each other. It will not be denied that they both serve the Olympic Peninsula, the same territory. Substantially all of the traffic originates in Seattle and practically all of the traffic from the peninsula is for Seattle. On the Olympic Peninsula, the respondent ferry company and the appellants operate into the same territory, and on the main land, although the termini are not identical in location, they are identical in that they would draw the same traffic both as to origin and destination.

Similar in principle to the case at bar is *Pacific Northwest Traction Co. v. Department of Public Works,* 151 Wash. 659, 276 Pac. 566, in which was involved the "territory" provision of the automobile transportation certificate act. In that case, the appellant traction company held a certificate to supply motor vehicle service over the old Pacific highway from Seattle to Everett. When the new Pacific highway from Seattle to Everett was completed, the appellant traction company and respondent Krakenberger ap-

plied for a certificate to operate over the new Pacific highway. The department granted the certificate to Krakenberger. The order was affirmed on review by the superior court, but on appeal was reversed by this court. We said:

"Under this statute, a certificate holder in territory already served is entitled to priority as to a certificate in that territory. *State ex rel. United Auto Transp. Co. v. Dept. of Public Works,* 119 Wash. 381, 206 Pac. 21; *Yelton & McLaughlin v. Dept. of Public Works,* 136 Wash. 445, 240 Pac. 679.

"Inquiry must then be directed to whether the Pacific Northwest Traction Company was, when it made its application for a certificate over the new highway, serving the territory which would be served under the new certificate. This requires a statement of the situation. . . .

"The Traction Company operates motor stages through Everett and into the territory to the north. It also operates stages to the territory south of the city of Seattle. The great bulk of the transportation between Everett and Seattle is through transportation, terminal to terminal, from one city to the other, or to points beyond. Of the total transportation between the two cities, approximately sixty per cent originates at or is destined to points north of the city of Everett. The amount of the local traffic picked up between the two cities is very small. Almost all of the forty per cent which does not originate at or is destined to points north of Everett originates in one city or the other and is destined to the other city. The country through which the new highway passes is thinly settled, and the amount of traffic to be derived from that territory cannot be said to be more than nominal. From these facts, which are not in dispute, it must be concluded that the Traction Company, under its present certificate, serves, not only the territory between the two cities, but the inhabitants of those cities as well, and the territory to the north of Everett and to the south of Seattle. . . .

"The facts stated bring the Pacific Northwest Traction Company within the meaning of the statute which

provides that a certificate holder in territory already served by it, has a prior right to another certificate which is to be issued to serve that territory. . . ."

In *North Coast Transportation Company v. Department of Public Works,* 157 Wash. 79, 288 Pac. 245, the respondent transportation company held a certificate to furnish motor vehicle service over the highway ("High Line route") between Seattle and Tacoma. A new route between those cities was completed, whereupon the respondent transportation company and appellant Krakenberger applied for a certificate to operate over the new route. The department issued the certificate to Krakenberger. On review by the superior court, the order was reversed. On appeal, we affirmed the order of reversal, saying:

"The department of public works is not given unlimited power to grant certificates of convenience and necessity authorizing the furnishing of passenger and express service over a given route to whomsoever it will, regardless of existing conditions. On the contrary, its powers in this respect are governed by statute, and the statute (Laws of 1921, p. 341, chap. 111, § 4) [Rem. Comp. Stat., § 6390] expressly provides that it shall have power to grant a certificate in a territory already served by a certificate holder only when the existing certificate holder will not perform the service to the satisfaction of the department. There is here no question as to the service rendered by the existing certificate holder. . . . It was further shown that between 93 and 94 per cent of the passengers carried by the respondent were through passengers, that is, passengers who rode from terminal to terminal, and that its motor coaches used for the transportation of passengers at the time of the hearing were making an average of sixty trips per day between the terminals. Nor was any formal complaint ever made to the department of the inadequacy of the service. But had there been, it would not alone have been a sufficient reason for granting a certificate to another.

As we said in *State ex rel. United Auto Transp. Co. v. Department of Public Works,* 119 Wash. 381, 206 Pac. 21:

" 'The question of whether the service is inadequate, or whether the rates charged by relator are proper, are questions which, under the law, the relator is entitled to a hearing upon, and it is only after a hearing and an order entered directing the relator to change its schedule or rates, and a refusal by the relator to obey that order, that respondents have power to issue a certificate to some other person to then inaugurate a new service.'

"The appellant Krakenberger has no certificate of convenience and necessity authorizing him to furnish passenger and express service between the cities of Tacoma and Seattle over any route. In fact, he is not engaged in the business of carrying passengers and express matter for hire in motor propelled vehicles in any place or over any route in the state, and the record shows that he never has been so engaged. To him the certificate means the inauguration of an entirely new service.

"If, therefore, there is justification for the order of the department of public works, it must be found in the fact that it authorizes a service in territory not already served by a certificate holder. But the record lends no support to this conclusion. Not only is the territory over the entire route served by the respondent certificate holder, but it is served for a part of its distance by a number of other certificate holders who have authority to operate from the terminals to intermediate points. . . .

"While the new route may be more convenient to some of the local inhabitants and less convenient to others than the old route, both routes serve the same territory. Looking at the application of the appellant in the light of the facts shown, it is at once apparent that the desire for the certificate is not to serve the traffic arising from the local territory. This traffic, as we have shown, is but little more than nominal. Its actual purpose is to serve the traffic arising at the terminals of the route, and this is territory already served."

The judgment should be reversed, and the cause remanded with directions to the superior court to reverse the order of the department.

TOLMAN, C. J., and MITCHELL, J., concur with MILLARD, J.